# HELENA WATER WORKS COMPANY, Respondent, *v.* CITY OF HELENA et al., Appellants.

(No. 2,013.)

(Submitted May 23, 1904.   Decided October 20, 1904.)

*Municipal Corporations — Indebtedness—Current Expenses— Installation of Water System.*

1.  Under Session Laws 1903, page 42, providing that, even after a city has reached the constitutional limit of indebtedness, it still has power to pay its reasonable and necessary current expenses out of the cash in its treasury, the determination of what is a current expense is for the courts; but the determination of the city council as to whether a particular current expense is reasonable and necessary is not subject to review by the courts in the absence of fraud or abuse of discretion.
2.  Session Laws 1903, page 42, was passed immediately after a holding by the supreme court that a city which had reached the constitutional limit of indebtedness had no power to pay out funds for any purpose, and provided that, even after a city had reached the constitutional limit of indebtedness, it should still have power to manage and conduct its affairs on a cash basis, and pay its reasonable and necessary current expenses. *Held,* that an expenditure to install and operate a water system to belong to the city is not for current expenses, and not authorized by the statute.

*Appeal from District Court, Lewis and Clarke County; J. M. Clements, Judge.*

ACTION by the Helena Water Works Company against the city of Helena and others.   From a judgment for plaintiff, defendants appeal.   Affirmed.

*Mr. Edward Horsky,* for Appellants.

*Messrs. Carpenter & Carpenter,* and *Mr. M. S. Gunn,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On October 23, 1903, the Helena Water Works Company commenced an action in the district court to secure an injunction

restraining the city of Helena and its executive officers from entering into a contract to purchase certain water pipes, fire hydrants, etc., and from paying for the same.

It is alleged in the complaint that the city is and has been for several years last past continuously indebted in excess of three per centum of the valuation of all the taxable property within the city; that pursuant to an order of the city council the city has caused to be published a notice, the material portion of which is as follows:

### "Bids Wanted.

"Notice is hereby given that until Monday, twelve (12) o'clock noon, October 19, 1903, the city of Helena, Montana, will receive sealed proposals, in accordance with specifications, for entering into a contract, to be awarded to the lowest responsible bidder, for furnishing one hundred and seventy-seven (177) tons of cast iron pipe, specials, eleven (11) fire hydrants, lead, jute, packing, gate valves, etc., such materials to be used on Main street as part of water system. Terms cash: * * *"

"Edward Horsky, City Clerk."

It is further alleged that the city of Helena does not own or control any water system, and has never supplied itself or its inhabitants with water, but that the city and its inhabitants have been supplied with water by the plaintiff company under a franchise owned by it and granted to it by the city of Helena; that it is the purpose of the city of Helena to make the pipe, hydrants, etc., mentioned in the notice above, a part of a water system which it is the purpose of the city to install, own, control and operate. It is further alleged that the city council has made an appropriation of $12,000 out of the funds received from taxes collected by the city for general municipal and administrative purposes for the payment of the pipe and other materials mentioned above. It is then alleged that, unless restrained by the court, the city will enter into a contract for the furnishing of the pipe and other materials mentioned in the notice; that a further indebtedness of the city will thereby be incurred; that

the mayor and city clerk will issue a warrant for the payment of such materials; and that the treasurer, upon presentation, will pay such warrant, and thereby misappropriate a large amount of the funds belonging to said city.

The answer admits all the allegations of the complaint, except the allegation that a further indebtedness on behalf of the city will be created, that a warrant to pay for the materials mentioned in the notice will be issued, or that there will be any misappropriation of city funds. It is also alleged in the answer as follows: "That under the conditions existing on said Main street, in the city of Helena, and with which said city is and has been confronted at all times within the year last past, and immediately prior to the commencement of this action, the said appropriation and expenditure was, by the city council, in the exercise of its business functions and discretion, deemed and considered a reasonable, necessary and current expense of said city of Helena." No reply was filed.

Thereafter the plaintiff and the defendants each filed a motion for judgment on the pleadings. The motion of the defendants was overruled, the motion of the plaintiff sustained, and a judgment in favor of the plaintiff entered granting the relief sought in the complaint; from which judgment this appeal is prosecuted.

In *State ex rel. Helena Water Works Co. v. City of Helena,* 24 Mont. 521, 63 Pac. 99, 55 L. R. A. 336, 81 Am. St. Rep. 453, this court intimated that it would be competent for the city of Helena, even though the constitutional limit of indebtedness had been reached, to continue to transact its business on a cash basis. However, in *Helena Water Works Co. v. City of Helena,* 27 Mont. 205, 70 Pac. 513, it was held that the intimation given in the former opinion was merely *obiter,* and erroneous, for the reason that under Sections 4811, 4812, Political Code, then in force, before any claim against the city could be paid, such claim must be presented to the city council, audited by it, an indebtedness on the part of the city established, a warrant for the amount

of such indebtedness drawn, and such warrant duly presented for payment. The effect of this decision was to deny to the city of Helena and other cities which had reached the constitutional limit of indebtedness power or authority to proceed with the management of the business affairs of such cities, unless all work performed for or materials furnished to them be done gratuitously; and, as such a condition of affairs is not within reason, the actual effect was to stop the corporate existence of such municipalities until some relief could be had at the hands of the legislature, for the court specifically decided that no funds can be paid out until an indebtedness is first established, and, as the limit of indebtedness had been reached already, no funds could be paid out at all (special assessments excepted).

This decision was rendered November 10, 1902. On February 25, 1903, the Eighth Legislative Assembly passed an Act entitled "An Act to amend Sections 4811, 4812, of Article IV, of Chapter III, Title III, Part IV, of the Political Code of the State of Montana, relating to legislative powers of cities and towns." (Session Laws 1903, Chapter 30.) Those sections, as amended, now particularly provide that, even after a city has reached the constitutional limit of indebtedness, it still has power (1) to manage and conduct its business affairs on a cash basis, and pay its reasonable and necessary current expenses out of the cash in its treasury derived from its current revenues; (2) in the event it makes such payment in advance, to require indemnity or security in the form of a cash deposit, to be held by the city treasurer; (3) before payment of the current expenses, to set apart sufficient money to pay the interest on its outstanding indebtedness, and to create any sinking fund for which provision is made.

Considering the foregoing amendments, then, in the light of the history surrounding their enactment and the decision of this court to which reference has just been had, and which must be deemed to have been in the legislative contemplation in making such amendments, it is apparent that the purpose of the legis-

lature was to furnish some remedial measure which would permit such municipalities to live.

Section 4800, Political Code, specifies the items of expense which a city that has not reached the constitutional limit of indebtedness may incur. The list of items is a long one, and evidently was meant to include every species of expense necessary to the existence, well-being and prosperity of such municipality. If the legislature, in amending Sections 4811 and 4812, above, had intended to extend to municipalities laboring under the disability surrounding the city of Helena by reason of its having reached the constitutional limit of indebtedness, authority to incur any or all of those items of expense enumerated in Section 4800, terms sufficiently broad to indicate such purpose would doubtless have been employed. But, on the contrary, the legislative assembly made use of qualifying terms, which seem to indicate a purpose to limit the items to such only as are actually necessary to corporate existence. The terms used are "reasonable and necessary *current* expenses."

In the first place, then, under these amendments the city of Helena cannot pay any expense until provision is first made for interest on its outstanding indebtedness and for any sinking fund which the city may have undertaken to create. Then its authority to make expenditure of public money is limited not only to paying current expenses, but further limited to such current expenses only as are both reasonable and necessary. While it was left to the courts to determine what was meant by the expression "current expense," it was a matter exclusively for the city council to determine whether a particular current expense was reasonable and necessary, and a determination by the city council of such question would not be subject to review by the courts, in the absence of fraud or abuse of discretion. (1 Dillon on Mun. Corp., 4th Ed., Sec. 94; *East St. Louis* v. *Zebley,* 110 U. S. 321, 4 Sup. Ct. 21, 28 L. Ed. 162.)

The expression "current expense" is not found in Section 4800, above, which grants to city councils authority to incur

expense, and therefore that expression must be given the meaning which was intended by the legislature in amending Sections 4811 and 4812, above, if that can be ascertained. The word "current" means "running, now passing, common." (Webster's International Dictionary.) The term was doubtless used by the legislature to distinguish the common, recurring, running expenses of a city from such expenses as partake of the nature of an investment, or such as are to be incurred in a 'substantial or permanent improvement. In other words, the city may incur such necessary, reasonable expense as is requisite to the corporate existence of the city. If the city may incur any expense enumerated in Section 4800, then the qualifying term "current," made use of by the legislature in amending Sections 4811 and 4812, is meaningless. It was certainly not intended to place a premium upon extravagance or improvidence. Neither was it intended that a city which has reached the constitutional limit of indebtedness shall enjoy greater freedom in the expenditure of public money than a city which has kept well within the limits prescribed by the fundamental law of the state.

The record discloses that the city of Helena and its inhabitants are furnished with water by a corporation existing under a franchise granted to it by the city of Helena. It is further disclosed that the purpose of the city in soliciting the bids called for was to install and operate a water system which should belong to, and be under the control of, the city itself; and, while the object to be sought by the city may be ever so praiseworthy, the expenditure partakes so much of the nature of an investment in a permanent improvement that it cannot have been in the contemplation of the legislature when it limited the authority of the city of Helena to incur only necessary and reasonable *current* expenses.

If a city has so wisely administered its financial affairs that it has not reached the constitutional limit of indebtedness, every expenditure of public money made by it must be made under the very eyes of its inhabitants, any one of whom is afforded an opportunity to inspect the items of the proposed expenditure

and register his objection to such as may appear to him unwise or unnecessary; for in such case every item of proposed expenditure must be incorporated in an itemized bill, duly verified, filed with the city council, audited and allowed before payment can be ordered. But the city which has reached the limit of indebtedness may proceed to pay for its reasonable, necessary *current expenses* without any bills for the same ever having been made out, and with no opportunity whatever for interested taxpayers to inquire into or contest the allowance of any items of such expense.

The city which has been so unfortunate as to reach the constitutional limit of indebtedness must be content thereafter, while such disability exists, to maintain corporate existence, leaving any and all improvements not necessary to such existence for future efforts, when, by this forced economy, the city may so far reduce its indebtedness as to be able to take its place among other cities of the state which do not labor under this disability.

The legislature, in its wisdom, made provision for such continued existence, but employed terms in so doing, such as seem to indicate a legislative purpose to limit expenditure of public money to those items of expense only which may properly be designated as living expenses.

We are of the opinion that the answer states no defense, and the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.