PALMER, RESPONDENT, *v.* CITY OF HELENA ET AL., AP-
PELLANTS.

(No. 2,822.)

(Submitted February 14, 1910.   Decided February 24, 1910.)

[107 Pac. 512.]

*Municipal Corporations—Indebtedness—Constitutional Limita-
tion—Power to Erect Light Plant—Surplus Revenues.*

> **1.**  A city which is indebted beyond the constitutional limitation may
> not use its surplus revenues, no matter from what source derived, to
> acquire an electric light plant to supply itself and its inhabitants with
> light, where a company, operating both gas and electric light systems,
> under a franchise from the city, has ample facilities to meet all require-
> ments.  An expenditure of this character does not fall within the
> definition of "reasonable and necessary current expenses" which a city,
> laboring under such disability, has power to incur under sections 3287,
> 3288, Revised Codes.

*Appeal from District Court, Lewis and Clark County; J.
Miller Smith, Judge.*

ACTION by H. B. Palmer against the city of Helena and others.
From an order directing issuance of an injunction as prayed
for by plaintiff, defendants appeal.   Affirmed.

*Mr. Edward Horsky* submitted a brief in behalf of Appel-
lants, and argued the cause orally.

A city's right to provide itself with light is expressly con-
ferred by subdivisions 5 and 7, section 3259, Revised Codes.
The city may execute that power either by contract (*Daven-
port Gas Co.* v. *Davenport*, 124 Iowa, 22, 98 N. W. 892; *City
of Newport* v. *Newport Light Co.*, 89 Ky. 454, 12 S. W. 1040;
*Newport* v. *Newport Light Co.*, 84 Ky. 166; *Oakley* v. *Atlantic
City*, 63 N. J. L. 127, 44 Atl. 651; *Hendrickson* v. *New York*,
160 N. Y. 144, 54 N. E. 680), or by the construction of a plant.
(*State* v. *Hiawatha*, 53 Kan. 477, 36 Pac. 1119; *Fawcett* v. *Mt.
Airy*, 134 N. C. 125, 101 Am. St. Rep. 825, 45 S. E. 1029, 63
L. R. A. 870 (overruling *Mayo* v. *Washington*, 122 N. C. 5,

29 S. E. 343, 40 L. R. A. 163) ; *Jacksonville Light Co.* v. *City,* 36 Fla. 229, 51 Am. St. Rep. 24, 18 South. 677, 30 L. R. A. 540.)

Thus far the city has been doing so by monthly rentals. It now proposes to do so by the construction of its own plant. It has the surplus cash with which to do it, has the express power to pay out such cash, will not create any indebtedness, and has provided for the interest, sinking funds on all its bonds, and all other current expenses. Electric light is a corporate neces- sity and also, it is a "current" necessity, both literally and · figuratively speaking. The thing itself being a current ex- pense, the means by which it is supplied comes within the same rule. It is simply a question of degree. (*City of Craw- fordsville* v. *Braden,* 130 Ind. 149, 30 Am. St. Rep. 214, 28 N. E. 849, 14 L. R. A. 268; *Fawcet* v. *Town of Mt. Airy,* 134 N. C. 125, 101 Am. St. Rep. 825, 45 S. E. 1029, 63 L. R. A. 870; *Commissioners* v. *Webb,* 148 N. C. 120, 61 S. E. 670; *Town of Hendersonville* v. *Jordan,* 150 N. C. 35, 63 S. E. 167; see, also, *Brashear* v. *Madison,* 142 Ind. 685, 36 N. E. 252, 42 N. E. 349, 33 L. R. A. 474; *Gladwin* v. *Ames,* 30 Wash. 608, 71 Pac. 189; *McMaster* v. *Waynesboro,* 122 Ga. 231, 50 S. E. 122; *City of Detroit* v. *Wayne etc.,* 79 Mich. 384, 44 N. W. 622.)

To provide a city with light being a current expense, the question of whether it is reasonable or wise or necessary, in order to provide itself with light, to install its own plant, is for the counsel to determine. For the court to attempt to say how the city shall provide itself with light is but the inva- sion, if not the usurpation, of the council's discretion. (*East St. Louis* v. *Zebley,* 110 U. S. 321, 4 Sup. Ct. 21, 28 L. Ed. 162; *White* v. *Mayor,* 119 Ala. 476, 23 South. 999; *Overall* v. *City of Madisonville,* 125 Ky. 684, 102 S. W. 278, 12 L. R. A., n. s., 433; *Clay County* v. *United States,* 115 U. S. 618, 6 Sup. Ct. 119, 29 L. Ed. 482; *Brashear* v. *Madison, supra.*)

The city may legally supply private consumers with light, as implied power under the express powers conferred in refer- ence to lighting; and some cases even hold that in the absence of such express powers as are conferred upon Montana cities,

a municipality has the inherent, implied power to supply both municipal and domestic consumers. (*Ellinwood* v. *City of Reedsburgh*, 91 Wis. 131, 64 N. W. 885; *City of Crawfordsville* v. *Braden*, 130 Ind. 149, 30 Am. St. Rep. 214, 28 N. E. 849, 852, 14 L. R. A. 268; *Overall* v. *City of Madisonville, supra; Jacksonville Light Co.* v. *City*, 36 Fla. 229, 51 Am. St. Rep. 24, 18 South. 677, 30 L. R. A. 540.)

*Mr. Wm. Wallace, Jr.,* and *Mr. R. F. Gaines,* filed a brief in behalf of Respondent. *Mr. Wallace* argued the cause orally.

The case of *Helena Waterworks* v. *City of Helena,* 31 Mont. 243, 78 Pac. 220, is decisive of this action. The city lacks the power to build the electric lighting plant.

Subdivisions 5 and 7 of section 2359, Revised Codes, are claimed by appellant to confer the needed power to act here. They are found in a section containing eighty-two subdivisions, listing various powers possessed by city councils, but the councils referred to are of those cities still possessing their functions unimpaired, not of cities that, like Helena, are emasculated by excess of debt. Before the enactment of the relief measure (Revised Codes, secs. 3287, 3288), the city had no right to use its cash for any purpose save to reduce or pay its debt; after its enactment it could use it only for the purposes indicated in *Helena etc. Co.* v. *City of Helena,* 31 Mont. 243, 78 Pac. 220. Of course, it cannot use its power to tax to raise cash for purposes for which it cannot pay out the cash. Unless the building of a light plant is a current expense, it cannot use any cash therefor, however acquired, nor can it raise cash by taxation therefor. The evidence in the record shows the permanent character of an investment in an electric lighting plant, and that it can in no wise be distinguished from a water plant in this regard, and the decision in 31 Mont. 243, 78 Pac. 220, *supra,* declares that the latter cannot be a current expense. There is no distinction between an electric light and a water plant before the law. (See *Mayo* v. *Washington,* 122 N. C. 5, 29 S. E. 343, 40 L. R. A.

165; *Fawcett* v. *Mount Airy*, 134 N. C. 125, 101 Am. St. Rep.
825, 45 S. E. 1029, 63 L. R. A. 870.)   If there be any distinc-
tion, the waterworks would seem to present the more favorable
case for claim of power, rather than a lighting plant. (See
*Posey* v. *North Birmingham,* 154 Ala. 511, 45 South. 663,
15 L. R. A., n. s., 714.)

But counsel say that electric light being a corporate neces-
sity, the means by which it is supplied come within the same
rule, and that it is merely a question of degree.   That a statute
conferring a power involves various degrees is not an objection
to the power or its exercise; but to hold that, because various
degrees of power are bestowed by one section, all of the degrees
are necessarily in the nature of current expenditures, is illogical
and unreasonable.   Undoubtedly in settling the annual lighting
charges which the city now pays, it is acting under subdivisions
5 and 7, section 2359, but they are not violating the implied pro-
viso limiting their authority to current expense. (*Windsor*
v. *City of Des Moines,* 110 Iowa, 175, 80 Am. St. Rep. 280, 81
N. W. 476; *State* v. *County of Marion,* 21 Kan. 317 (419).)
The term "current expenses" does not mean the erection of
buildings, etc. (see *Sheldon* v. *Purdy,* 17 Wash. 135, 49 Pac.
228), but has been said to mean the same as "running ex-
penses." (*State* v. *Board,* 68 N. J. L. 496, 53 Atl. 236.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion
of the court.

This action was brought by plaintiff, a taxpayer of the city
of Helena, to enjoin the city, its mayor and council, from pro-
ceeding to construct an electric light plant, to be paid for and
owned by the city, and from collecting so much of a tax of two
mills levied upon the taxable property in the city as was im-
posed for the purpose of raising funds to aid in paying for the
construction of the plant.   The pleadings and evidence are
voluminous, but there is no substantial controversy as to the
material facts.   The questions submitted for decision arise upon

the following facts, either admitted in the pleadings or found
from the evidence by the trial court: The assessed valuation of
the property within the city for revenue purposes for the year
1909 was $11,200,000. The bonded indebtedness then outstand-
ing was and now is $488,800, greatly in excess of the three per
cent limit permitted by the state Constitution. These bonds
having been issued several years ago, however, when the valua-
tion of the taxable property of the city justified the amount of
indebtedness represented by them, no question arises here as to
their validity, though no further indebtedness may be incurred
except as permitted by the Constitution, for water and sewerage
purposes. The city has never heretofore owned a light plant.
It and its inhabitants are at present being supplied with light
by the Helena Light and Railway Company, a corporation own-
ing and operating gas and electric light systems in the city,
under a franchise granted by the city, and amply sufficient
to meet all requirements. This franchise does not expire for
some years, and the rates charged for public and private con-
sumption are fixed by contract with the city which expires on
May 1st of the present year. The total levy of taxes for the
year 1909 to meet the current expenses of the city government
up to and including the first Monday of May, 1910, was ten and
three-fourths mills. Of this the fraction of a mill was a special
tax authorized by the statute for free city library purposes. Its
validity is not called in question. The proceeds of the levy
of ten mills, together with the income derived from licenses,
fines and penalties for violations of city ordinances, and other
miscellaneous sources of revenue amounted approximately to
$150,000, and were more than sufficient to meet current ex-
penses, including the interest on the bonded indebtedness and
such sinking fund as was required to be provided under existing
provisions of law. These expenses would require a gross outlay
of about $122,500. Included in the ten-mill rate were two mills
levied for lighting purposes. Theretofore only one mill had been
levied for this purpose. The increase of one mill was made
in order to raise money to be used, together with the surplus

funds in the city treasury, for installing the electric light plant, the purpose of which was to light the streets and buildings belonging to the city, and, if the city council should so decide, to supply the inhabitants of the city with light. On September 8, 1909, there was in the treasury of the city, in the fund designated in the ordinances as the general fund, a surplus of from $40,000 to $50,000. There is some controversy as to the sources from which this was derived, but for present purposes it may be assumed, as is claimed by the defendants, that it was accumulated from balances left over from year to year, of funds derived from sources other than taxes on property. On that date the mayor recommended to the council in writing that $25,000 of this surplus be transferred to a fund to be known as the electric light plant fund and to be used for equipping an electric light plant. This recommendation was adopted by the council, and thereafter, in making the usual levy of taxes for current expenses, the levy for lighting purposes was increased from one to two mills. Thereupon the mayor and council proceeded to call for sealed bids as a preliminary step for letting contracts for the purchase of materials, apparatus and machinery to be used in the installation of the lighting plant, and to that end caused to be inserted in one of the newspapers published in the city an advertisement calling for bids. The council failed to designate by ordinance or resolution the time for which the advertisement should be published. The time fixed therein for the consideration of such bids as might be made was October 18, 1909. The intention was to let contracts for the purchase of the materials required and to proceed at once to the installation of the plant. By the terms of the advertisement, the materials were to be paid for in cash. After a hearing the district court made an order directing the injunction to issued as prayed. The appeal is from the order.

Counsel have discussed in their brief some questions which have to do with the regularity of the proceedings touching the advertisment for bids for the supply of material, machinery, etc., and the availability of the surplus in the general fund

for the purpose to which it is sought to devote it, the last arising out of the controversy as to the sources from which it was derived. The conclusion at which we have arrived, upon the fundamental question involved, renders it unnecessary to consider them. It is not a question of moment whether the proposed expenditure is to be made out of moneys properly in the general fund, and therefore available for any public purpose to which the city government may choose to devote them, or whether they are such as under the law and the ordinances applicable must be devoted exclusively to some other definite purpose. The ultimate question is: May a city, indebted beyond the limit prescribed by the Constitution (section 6, Article XIII), use its revenues, derived from any source, to acquire an electric light plant to supply itself and its inhabitants with light while it has at hand an available source of supply, which has heretofore been, and now is, sufficient to meet all requirements? This question was answered by this court in the negative, in its decision in *Helena Waterworks Co.* v. *City of Helena,* 31 Mont. 243, 78 Pac. 220. After further consideration of the provisions of the statute applicable, we see no reason why that decision should be overruled or modified.

It was held in *State ex rel. Helena Waterworks Co.* v. *City of Helena,* 24 Mont. 521, 81 Am. St. Rep. 453, 63 Pac. 99, 55 L. R. A. 336, that the defendant city, in its embarrassed condition, could not lawfully enter into a contract for a term of years with the plaintiff waterworks company, to supply itself with water, because the result was the creation of a debt within the meaning of the prohibition, and hence that any amount due under such a contract was not a valid claim against the city. In a subsequent decision (*Helena Waterworks Co.* v. *City of Helena,* 27 Mont. 205, 70 Pac. 513), it was held that the city could not proceed upon the "pay as you go" plan, because under existing provisions of law (Political Code 1895, sections 4811, 4812) all claims against it for services rendered or material furnished must be audited and allowed as such before they could be paid, and thus became debts within the meaning of

the prohibition. Under these conditions the city was shorn of
its power to exist as a municipality. It could not conduct its
government without incurring debts. This it could not law-
fully do, because it was prohibited from doing so by the Con-
stitution; and it could not proceed upon the "pay as you go"
plan, because not permitted to pay cash for services rendered
or materials furnished, under the mandatory provisions of the
statute *supra.* In order that cities laboring under such dis-
abilities might nevertheless be able to live and continue their
governmental functions until the time should arrive at which,
by economy and thrift, they might be restored to their status
under the general laws, the legislative assembly amended sec-
tions 4811 and 4812 of the Political Code, *supra* (Session Laws
1903, Chapter 30; Revised Codes, secs. 3287, 3288) so as to
permit them to conduct their affairs upon a cash basis and pay
reasonable and necessary current expenses out of current rev-
enues, or in cash in advance, upon requiring indemnity in the
form of a cash deposit, to be held by the treasurer; provided,
however, that sufficient funds had first been set apart for the
payment of interest falling due from time to time upon valid
and outstanding bonded indebtedness, and any sinking fund
therein provided for. They were also authorized to pay in the
usual way all valid claims against funds raised by taxes spe-
cially authorized by law for the payment of such claims. The
history, purpose and effect of this legislation is stated in detail
in the opinion in *Helena Waterworks Co.* v. *City of Helena,*
31 Mont. 243, 78 Pac. 220, *supra.* The discussion need not
be repeated here. The question involved was whether the city,
enabled to exist and conduct its business affairs only by reason
of the legislation referred to, was authorized to purchase pipe
and material to be used in installing a water plant out of its
current revenues under the head of necessary current expenses
while it could secure an adequate supply from the waterworks
company. Mr. Justice Holloway, speaking for the court, said:
"Section 4800, Political Code [Revised Codes, sec. 3259],
specifies the items of expense which a city that has not reached

the constitutional limit of indebtedness may incur. The list of items is a long one, and evidently was meant to include every species of expense necessary to the existence, well-being, and prosperity of such municipality. If the legislature, in amending sections 4811 and 4812, above, had intended to extend to municipalities laboring under the disability surrounding the city of Helena by reason of its having reached the constitutional limit of indebtedness, authority to incur any or all of those items of expense enumerated in section 4800, terms sufficiently broad to indicate such purpose would doubtless have been employed. But, on the contrary, the legislative assembly made use of qualifying terms, which seem to indicate a purpose to limit the items to such only as are actually necessary to corporate existence. The terms used are 'reasonable and necessary *current* expenses.' "

It was then pointed out that under the amended sections, applicable exclusively to conditions had in mind by the legislature, the authority of the city extended no further than to make expenditures both reasonable and necessary for the corporate existence of the city, and that the proposed expenditure, though entirely praiseworthy, did not, under existing circumstances, fall within the meaning of the expression "reasonable and necessary current expenses," as employed in the statute. The concluding portion of the opinion is as follows: "If a city has so wisely administered its financial affairs that it has not reached the constitutional limit of indebtedness, every expenditure of public money made by it must be made under the very eyes of its inhabitants, any one of whom is afforded an opportunity to inspect the items of the proposed expenditure and register his objection to such as may appear to him unwise or unnecessary; for in such case every item of proposed expenditure must be incorporated in an itemized bill, duly verified, filed with the city council, audited and allowed before payment can be ordered. But the city which has reached the limit of indebtedness may proceed to pay for its reasonable, necessary *current* expenses without any bills for the same ever having

been made out, and with no opportunity whatever for interested taxpayers to inquire into or contest the allowance of any items of such expense. The city which has been so unfortunate as to reach the constitutional limit of indebtedness must be content thereafter, while such disability exists, to maintain corporate existence, leaving any and all improvements not necessary to such existence for future efforts, when, by its forced economy, the city may so far reduce its indebtedness as to be able to take its place among other cities of the state which do not labor under this disability. The legislature, in its wisdom, made provision for such continued existence, but employed terms in so doing, such as seem to indicate a legislative purpose to limit expenditure of public money to those items of expense only which may properly be designated as living expenses."

We see no distinction between expenditures for the purpose of installing a water plant, and an outlay to install an electric light plant. The question is not whether a city may, under the power conferred by the general laws, expend its revenues to install such a permanent improvement as an electric light plant, but whether a city, in the disabled condition in which the city of Helena is, has the power, under the provision *supra*, to expend its revenues for such purpose. Under the rule of construction applicable, viz., that a city has no power except such as is conferred by legislative grant, either expressly or by necessary implication (1 Dillon on Municipal Corporations, 4th ed., sec. 39; *Davenport* v. *Kleinschmidt*, 6 Mont. 502, 13 Pac. 249; *City of Helena* v. *Kent*, 32 Mont. 279, 80 Pac. 258), the power to make the proposed expenditure does not exist.

This conclusion incidentally disposes of the additional levy of a tax of one mill, the proceeds of which were intended to be devoted to the same purpose. If it is not lawful for the city to make the proposed expenditure, it certainly follows that it may not levy a tax to raise money for that purpose. It is not controverted that the levy was made to aid in installing the permanent improvement. It was therefore unauthorized. If, in fact, as is contended by counsel for defendants, the levy had

been made generally to defray current expenses for lighting the city, the courts would not undertake to determine whether the council had exercised a proper judgment and discretion in making it. The record, however, shows that the purpose of it was to aid in the proposed improvement.

The order of the district court is affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.

