STATE ex rel. ROWLING et al., Relators, *v.* DISTRICT COURT et al., Respondents.

(No. 2,889.)

(Submitted July 6, 1910.   Decided July 7, 1910.)

[110 Pac. 86.]

*Writ of Supervisory Control—Contempt Proceedings—Questions Determinable—Metropolitan Police Law.*

Writ of Supervisory Control—Contempt Proceedings—Questions Reviewable—Metropolitan Police Law.

1.   In proceedings, under writ of supervisory control, to review the action of the district court in holding that the mayor of a city to whom a writ of mandate had been issued to restore certain policemen to their offices, from which they had been unlawfully ousted by him (Revised Codes, secs. 3304–3317), was not in contempt of court, the only question presented to the appellate court for determination was whether said mayor had actually and in good faith obeyed the order by restoring the officers to their places. Hence the question whether he could, as he did shortly after such restoration, relieve the men from active duty and place them on the eligible list, provided for by the Metropolitan Police Law, *supra,* and other kindred propositions not theretofore presented to the district court for adjudication, were not properly determinable.

Contempt Proceedings—Right to Office—Question not Triable.

2.   The right to exercise the duties of an office cannot be tried summarily in contempt proceedings.

Same—Evasion of Order—Question Triable.

3.   Under proper pleadings, the district court may, in contempt proceedings, determine the question whether the action of the contemnor, in shortly after literally obeying its order, taking such steps as to bring about the same condition of affairs as that which the order of the court sought to remedy, was a mere subterfuge to evade the law and avoid actual compliance with the order.

Original application by the state, on the relation of J. H. Rowling and others, for a writ of supervisory control to the district court of the second judicial district in and for Silver Bow county and Honorable John B. McClernan, a judge thereof. Dismissed.

*Messrs. Kirk, Bourquin & Kirk,* and *Mr. W. E. Carroll,* for Relators, submitted a brief. *Mr. George M. Bourquin* argued the cause orally.

*Mr. Edwin M. Lamb*, appearing in behalf of Respondents, argued the cause orally.

MR. JUSTICE SMITH delivered the opinion of the court.

Prior to May, 1909, the relators were duly appointed and acting permanent police officers of the city of Butte. On December 18, 1909, the Honorable Charles P. Nevin, mayor of that city, served them with notice that they were discharged from the police force. Thereupon, upon proper proceedings being instituted, the district court of Silver Bow county, on April 27, 1910, held that he had no such authority, and ordered him to reinstate them in office as policemen and members of the police department. On the morning of April 28, 1910, the mayor obeyed the order of the court by restoring relators to active duty upon the force, and on the afternoon of that day, after they had each served eight hours, he assumed to relegate them to the eligible list without pay, giving as a reason therefor that the police department was greater numerically than the needs of the city required. His notice to them was as follows:

"Dear Sir: Owing to the condition of the finances of the city of Butte, which require retrenchment and economy, and for the further reason that the police department is greater numerically than the needs of the city require, I have this day reduced the number of the police department to the extent of fifteen, and in order to accomplish this purpose and this end I have put you (together with fourteen others) out of active service as a member of said department, and your name is placed upon the eligible list of said department, being the list of persons eligible to appointment under the Act of the legislative assembly of the state of Montana known as Chapter 136, Session Laws 1907 (Revised Codes, secs. 3304–3317), and you are therefore upon said list, with the right to be returned to duty and position in said department when the financial condition of the city will permit and the exigencies of the service require it."

Upon demand being made of the mayor "that he obey and comply with the mandate of the district court and restore peti-

tioners to their offices and the duties and salaries thereof,'' he refused.  On May 3, 1910, they instituted contempt proceedings in the district court to compel the mayor ''to obey and comply with'' the writ of mandate theretofore issued.  The facts set forth in the application for the order were the same as those just recited, with the addition that it is alleged in such application that ''no change has occurred nor have any new conditions arisen which would alter the right of these relators to the relief afforded them by said judgment and order since its rendition, and the attempted placing of these relators upon the 'eligible list' was and is intended by the respondent as an invasion of the provisions of the Metropolitan Police Law and a contemptuous and willful disregard and circumvention of the mandate of the court.''  In response to a citation duly issued, the mayor answered that he had fully complied with the original mandate of the court; that he had set aside his former order removing the relators from the police force, and had restored them to their places as members thereof, in obedience to the order of the court; that he recognized them as members of the force, but that ''for the purpose of curtailing the expenses of the city and of avoiding a needlessly large police force'' they were retired from active service.  The district court adjudged that the mayor was not in contempt, and discharged the order to show cause why he should not be punished.

The matter comes to this court on application for a writ of supervisory control to compel the district court and the Honorable John B. McClernan, a judge thereof, to show cause why the writ of mandate above referred to should not be enforced and the mayor compelled to obey the same.  It is further alleged in the petition filed in this court as follows: ''And your petitioners respectfully show that by the evidence aforesaid it appeared that said mayor had during his incumbency, and prior to his discharge of petitioners, appointed to and upon said force in excess of thirteen members mostly of no police experience, who at the time last aforesaid, at all times hitherto, and now continue in active service thereon, discharging the duties and en-

joying the salaries thereof, two of which at the time so appointed by him had not been residents of said city for a period of two years prior to their appointment as aforesaid, and also that for the fiscal year ending on the first Monday in May, both of 1910 and 1911, the council of said municipality appropriated more money to pay the expense and salaries of the police force aforesaid than was necessary for and than would be required to pay such expense and salaries for said police force, including those appointed by the said mayor as aforesaid and also petitioners.''

The respondents have made return to an order to show cause heretofore issued, in which they, in effect, admit all of the material allegations of the petition, and in addition thereto we find the following: ''Admit that by the testimony in the *mandamus* proceedings it appeared that prior to the fifteenth day of December, 1909, vacancies occurring by deaths, resignations, and removal in police department had been filled, and in this connection allege that the testimony taken at said time also showed the appropriation of the police department for the fiscal year ending the first Monday in May, 1910, to be $110,000, and the appropriation for the fiscal year ending the first Monday in May, 1911, to be $90,000; also that by the testimony taken at said time it was made to appear that one of the appointees to fill a vacancy, as aforesaid, at the time of his appointment resided a short distance without the city limits, but in this connection the respondents allege that said appointment was made prior to December 15, 1909, and there was no testimony showing that the said Charles P. Nevin, as mayor of the city of Butte, had any knowledge of that fact.''

Upon the cause being called for argument in this court, it was stated by counsel that the pleadings appeared to raise certain issues of fact; but it was finally agreed to submit the matter upon the petition and the return thereto, without further pleading or other proceeding. It is contended by counsel for the relators (1) that the mayor has no authority under the law to reduce the active police force for any reason, economical or

otherwise; (2) that the power to reduce the active force is vested in the city council alone; and (3) that, if the mayor's power be conceded, it must be exercised in good faith, and not with a view of putting his own appointees in the places of those policemen who are retired from active service. They argue that, if a policeman is taken from active service for any sufficient reason and placed upon the waiting list of eligibles, when occasion arises to increase the active force, he must be given the preference over one who has never served, and that when several policemen are relieved from active service they must be restored to duty, when the necessities of the city demand increased police protection, in the order in which they were taken off the active list. Counsel in their brief say: "Nowhere does the Metropolitan Police Law authorize the mayor to relegate patrolmen to the eligible list on the score of economy."

But the sole question for determination is: Was the district court correct in holding that the mayor had fully complied with its original mandate, and was therefore not in contempt? The question of his power to relieve policemen from active duty for reasons of economy was not before the court in either the *mandamus* or contempt proceedings. It could not have arisen in the *mandamus* proceedings, for the reason that the relators were not temporarily relieved from duty in the first instance; but the right was claimed to discharge them permanently from the force, and the only question before the court was whether any such power was lodged in the mayor. The court properly held that no such power existed, and ordered that they be restored to their places as members of the force. It could not arise in the contempt proceedings, because the only question for determination there was whether the mayor had actually and in good faith obeyed its order by restoring the relators to their original status. The record shows that he complied literally with the order. But he now claims that, conceding he had no such power as that first asserted by him, he yet has the authority to reduce the force, because it is unnecessarily large, or for economical reasons, and that he has in good faith exercised the power by relieving the relators from active duty. Assuredly

this power rests somewhere. Whether in the mayor or the council is a question to be determined. But the district court, as we read the pleadings, has had no opportunity to decide it. No such issue could properly have been presented to that court upon motion to punish as for a contempt for failure to restore the relators to their places as policemen. The act now complained of is an entirely different one from that to which exception was taken in the *mandamus* proceedings, which the court held to have been unauthorized; and unless it can be construed to be a mere device to evade the order of the court, and accomplish by indirection the same result as that originally sought, then it cannot be said to have been an act demanding punishment as for a contempt of court. The right to exercise the duties of an office cannot be tried summarily in contempt proceedings.

The allegation that the testimony in the *mandamus* proceeding showed that Mayor Nevin, during his incumbency of office and prior to the discharge of relators, had appointed an equal number of new policemen, who should, as relators now claim, have been relieved from active service instead of themselves, does not change the situation. The question of the mayor's right to do that was not properly determinable in the *mandamus* proceedings; neither is it raised by the pleadings in this court. It is a new question, which should be presented to the district court in a new proceeding, as should also the question as to where the power to reduce the force resides. If these questions should be resolved against the mayor, and he then refuses to restore the petitioners to active service, he would be in contempt. It was admitted in argument that in relieving relators from active duty the mayor acted in good faith in exercise of an authority which he claimed to have, and no inference of bad faith on his part is predicated in the petition upon the allegation that prior to the discharge of relators he had appointed thirteen other policemen.

We are not to be understood as holding that in the contempt proceedings the district court would not have been warranted in determining the question of fact whether the action of the

mayor under all the circumstances was not a mere subterfuge to evade the law and avoid actual compliance with the order of the court. That question might properly have been determined. But no such issue appears to have been made in that court, and in this court, as hereinbefore stated, counsel for relators announced that they were content to submit for determination the questions of law alone arising upon the pleadings.

We think the district court properly discharged the order to show cause. The proceedings are dismissed.

*Dismissed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.