STATE EX REL. ROWLING ET AL., APPELLANTS, *v.* MAYOR OF THE CITY OF BUTTE, RESPONDENT.

(No. 2,977.)

(Submitted May 10, 1911. Decided May 20, 1911.)

[117 Pac. 604.]

*Cities and Towns—Police Department—Metropolitan Police Law—Reducing Force—Power in City Council.*

1. *Held,* that the power to reduce the police force, as constituted under the Metropolitan Police Law (Rev. Codes, secs. 3304–3317), if unnecessarily large or for economical reasons, resides in the city council and not in the mayor.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

MANDATE by the state, at the relation of James H. Rowling and others, to compel the mayor of the city of Butte to restore relators to active duty on the police force. Writ denied, and relators appealed from the judgment and an order denying them a new trial.

*Mr. W. E. Carroll,* and *Messrs. Kirk, Bourquin & Kirk,* submitted a brief in behalf of Appellants. *Mr. George M. Bourquin* argued the cause orally.

The only question involved herein is whether or not the mayor has authority to relegate members of the police force theretofore permanently appointed, to an "eligible list," so termed, on

the score of economy, and without authority or direction of the council, the council having appropriated moneys sufficient to pay their salaries; and, if so, whether he is not bound to first thus relegate to the eligible list junior probationary appointees in the inverse order of appointment. We submit he had no such power. The council creates the offices of patrolmen, and the mayor by appointments fills them. The council might empower the mayor to appoint a definite number of patrolmen, or as many as in his judgment were required. In either case, once the mayor had appointed, his power was exhausted, and in either case he could revoke no appointment nor change the status of a patrolman, save as the Metropolitan Police Law authorized him. Nor can any alleged custom prevail against said law. Nowhere does said law authorize the mayor to relegate patrolmen to any "eligible list" on the score of economy. To create and abolish certain offices, to levy and collect taxes, to fix compensation of officers, to make appropriations, to audit claims, and to determine what is necessary and to incur expense therefor, is purely legislative, and exclusively for the council. The mayor merely executes the council's will therein. (Rev. Codes, secs. 3220, 3259, subds. 2, 47, 76, sec. 3287; *Helena etc. Co.* v. *Helena,* 31 Mont. 247, 78 Pac. 220.)

There are cases that hold that the power that creates the offices of patrolmen may also abolish them. (*Venable* v. *Board,* 40 Or. 458, 67 Pac. 203.) But that is not this case. Here the council alone has the power to create a police force, and the council alone can reduce the number. (1 Dillon on Municipal Corporations, secs. 245, 250, 253, 254.) To this counsel for respondent will doubtless urge that this is an instance, not of the exercise of the power of amotion, but rather of suspension. Mechem on Public Officers, section 453, however, says that "the power to remove an officer does not include the power to suspend him temporarily from office." Reason compels the admission that if the greater power of removal is not possessed, then most certainly the lesser power of temporary suspension could not be implied. In *Speed* v. *Detroit,* 98 Mich. 360, 39 Am. St. Rep. 555, 59 N. W. 406, 22 L. R. A. 845, it is said: "Courts may not surmise or speculate as to

legislative enactments. With the reasons for conferring or with-holding a power the courts have no concern. They must interpret the statute as they find it.'' (See, also, *People* v. *Woodruff*, 32 N. Y. 355.) So, in this case, the law being absolutely silent as to the method of reducing the police force on the score of economy, it would be unwise, we submit, for this court to read into it any power in the mayor to suspend or remove. If the court is of the opinion that such power does exist somewhere and must exist in some person or board, then it must rest with the corporation as a whole, not with the mayor alone. (*Metsker* v. *Neally*, 41 Kan. 122, 13 Am. St. Rep. 269, 21 Pac. 206.) This authority has been extensively quoted in support of the proposition that mandate is the proper remedy in cases of this nature to restore to office. (See, also, *State* v. *Kuehn*, 34 Wis. 229.)

For the sake of argument, it might be admitted that if the council by order or resolution determined economy or necessity required fewer patrolmen, it might authorize the mayor to relegate the excess in a definite number to an ''eligible list.'' But until it does so, the mayor has no such power. And by implication, the council says these patrolmen are necessary, having appropriated sufficient money to pay their salaries. We further submit that whenever the mayor can lawfully relegate patrolmen to the eligible list, the spirit of the Police Law requires that he shall do so in inverse order of their appointment. Otherwise, he could completely change the force by first appointing new men equal in numbers to the old men, then on the score of econ-omy reduce the force to the original number by relegating all the old men to the eligible list. True, he could do this but once, but once would, like the wound of Mercutio, serve.

*Mr. Edwin M. Lamb, Mr. John R. Boarman,* and *Mr. N. A. Rotering* submitted a brief in behalf of Respondent. *Mr. H. L. Maury* argued the cause orally.

Section 3305, Revised Codes, invests the mayor with the charge of and supervision over the police department, and in no section of the Code known as the Metropolitan Police Law is there any provisions contemplating or providing for the concurrence of

the city council in any act of the mayor, having to do with the police department, so that in view of the fact that that bill is silent upon the question of any participation by the council in such matters, it would seem, invoking the maxim "*Expressio unius exclusio alterius,*" as a means of interpretation of the Police Law, that it was the intent of the legislature to invest the mayor with full power over the police department, subject to the limitations of the Act.

Taking into consideration the control and power of the mayor over the police department as given him by the Metropolitan Police Law in connection with the large general powers invested in him by the eighteen subdivisions of section 3250, it would seem that if the power to control, manage or regulate the police force rested anywhere, it would be within the scope of his duties and powers as set forth in the laws referred to, and being charged with the general supervision of the affairs of the city, it would be his duty to effect such economies in the different departments as could be done without impairing the efficiency of the public service. The attention of the court is called to the case of *People* v. *Waring,* 7 App. Div. 204, 40 N. Y. Supp. 275, where a veteran of the war holding his position under civil service rules was discharged from service because there was nothing for him to do. *State* v. *Mayor,* 63 N. J. L. 148, 43 Atl. 433, holds that where an officer becomes useless, the city, as a matter of public economy only, and only for economical reasons and purposes, was justified in discharging relators from service, notwithstanding the statute prohibited the abolishment of the offices. *Fitzsimmons* v. *O'Neill,* 214 Ill. 494, 73 N. E. 798, is a voluminous case, which announces and approves the general doctrine that an occupant of an office under civil service rules may be laid off where the necessity arises because of reasons of economy.

In the case at bar, when no certain number of policemen has ever been fixed as constituting the police department, and under an ordinance providing for as many "patrolmen as may be required," and bearing in mind that the mayor is invested by the Metropolitan Police Law with full control of the police depart-

ment, subject only to the limitations of the Act, it was left to the mayor to say, when the financial condition of the city demanded. who, and how many, of the patrolmen should be placed upon the eligible list to again be employed when their services were required.

MR. JUSTICE SMITH delivered the opinion ·of the court.

This cause relates to the same controversy and state of facts as are disclosed in *State ex rel. Rowling* v. *District Court,* 41 Mont. 532. On July 9, 1910, relators filed with the district court their affidavit for a writ of mandate to compel the mayor of Butte to restore them to active service. The respondent answered, admitting substantially all the averments of the affidavit and alleging affirmatively that in relieving relators from active service he was exercising a power belonging to him as mayor, and that such power was invoked solely in the interests of economy. On October 1, 1910, the court denied a peremptory writ and entered a formal judgment to that effect. The appeals are from the judgment and an ·order denying a new trial.

But one question is necessary of decision in order to dispose of the appeals, and that is: In whom does the power to reduce the police force reside? We said in *State ex rel. Rowling* v. *District Court, supra,* that this authority is assuredly lodged somewhere. The respondent claims that it rests with him, while the relators maintain that it resides in the city council alone. We think the latter contention is the correct one. Section 3259, Revised Codes, which deals with the powers of a city council, provides that it shall have power to manage the affairs of the city generally, to levy and collect taxes for general and special purposes, to fix the compensation and prescribe the duties of all officers and other employees of the city, subject to certain limitations, and to appropriate money and provide for the payment of the expenses of the city. Section 3287, Revised Codes, provides that all accounts and demands against a city must be submitted to the council, and if found correct, must be allowed and paid. In the case of *Helena Water Works Co.* v. *City of Helena,* 31 Mont. 243, 78 Pac. 220, this court held that it is a matter exclusively

for the city council to determine whether a particular current expense is reasonable or necessary. It will, therefore, be seen at once that the legislature has delegated to the city council the sole authority to determine what amount of money shall be expended in carrying on the city government. This duty is purely legislative, and necessarily involved therein is the power to curtail expenses when necessity dictates. The council, being charged with these general duties of supervision over the economic and financial affairs of the city, may well be presumed to be the best judge as to whether economy of administration requires that the police force shall be reduced in numbers.

The judgment and order are reversed and the cause is remanded to the district court of Silver Bow county, with directions to issue a peremptory writ of mandate as prayed for.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

