THE HON. WILLIAM L. HOLLOWAY,
THE HON. SYDNEY SANNER,
} Associate Justices.

STATE EX REL. BENNETTS, RESPONDENT, *v.* DUNCAN, MAYOR, APPELLANT.

(No. 3,256.)

(Submitted May 19, 1913. Decided June 3, 1913.)

[133 Pac. 109.]

*Cities and Towns—Police Officers—Metropolitan Police Law— Wrongful Dismissal—Reinstatement — Mandamus—Laches— Appointment to Permanent Service—Duty of Mayor—Official Oath.*

Police Officers—Wrongful Discharge—*Mandamus*—Laches.
    1. Under the rule that mere lapse of time before applying for relief by way of mandate is not sufficient reason for denial thereof, unless the delay has resulted in prejudice to the rights of the adverse party (or the relief sought depends upon doubtful and disputed questions of fact), relator, a policeman discharged contrary to the provisions of the Metropolitan Police Law (Rev. Codes, secs. 3304–3312), *held* not to have been barred because of laches in waiting thirteen months before taking action for his reinstatement, such delay being due to a desire to await final settlement of law questions in a similar proceeding then pending.

Cities and Towns—Officers—Failure to Take Oath—Vacancies.
    2. The failure of the person elected or appointed to a city office to qualify within ten days (by taking the official oath) creates a vacancy

(447)

under section 3234, Revised Codes, which may be filled by the appointing power.

Same—Metropolitan Police Law—Police Officers—Appointment to Permanent Service—Duty of Mayor.

3. *Held*, that under the Metropolitan Police Law it is obligatory upon the mayor of a city to appoint one to permanent service on the police force who, after service for the probational term of six months, has demonstrated his fitness for the position; *held*, further, that probationers, being members of the force, may be removed only upon charges made and trial had as provided in sections 5 and 6 of the Act (Rev. Codes, secs. 3308, 3309).

Same—Police Officers—Appointment to Permanent Service—Official Oath.

4. The permanent appointment of a probationer after completion of the probationary term of six months is not to be construed as the beginning of a new term of service but as a confirmation of the original appointment; therefore, having subscribed the official oath when first appointed, it is unnecessary that a new oath be taken and subscribed upon receiving permanent appointment.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

Application for writ of mandate commanding defendant, Lewis J. Duncan, as mayor of the city of Butte, to reinstate plaintiff in the office of policeman. From a judgment awarding to plaintiff the relief asked, defendant appeals. Affirmed.

*Messrs. H. Lowndes Maury, John A. Smith,* and *N. A. Rotering,* for Appellant, submitted a brief; *Mr. Rotering* argued the cause orally.

Under the state of the record herein, laches of the relator, precluding a recovery, appear. Merrill on Mandamus, page 96, states: "The courts require those who would avail themselves of the assistance of this writ to be prompt in demanding the enforcement of their rights." Ignorance of his rights does not, as a rule, excuse a relator's delay. (*People* v. *Maxwell,* 87 App. Div. 391, 84 N. Y. Supp. 947.) Unsound advice obtained from counsel is no excuse. (*People* v. *Keating,* 49 App. Div. 123, 63 N. Y. Supp. 71.) And it has been held that the four months' limitation applicable to writs of *certiorari* will be applied. (*People* v. *Greene,* 87 App. Div. 346, 84 N. Y. Supp. 565.) If the party applying for *mandamus* waits a very long time, his application will be denied. (*Territory ex rel. Tanner* v. *Potts,* 3 Mont. 364, 368; *State ex rel. Beach* v. *District Court,*

29 Mont. 265, 270, 74 Pac. 498, and cases cited.)    From an examination of the authorities it will be observed that if the respondent, or others interested, are placed in a prejudicial position by reason of the delay, the application will be denied. If the relator prevails in this proceeding, he will not only obtain a judgment reinstating him, but will also obtain the right to sue the city of Butte for salary covering a period of several years, which will mean the expenditure of a large sum of money. The taxpayers of the city of Butte are therefore interested, and they have been placed in a prejudicial position by reason of the delay of the relator in pursuing his rights.    This proceeding, therefore, is different from those cases in which no one interested is prejudiced.

*Mr. W. E. Carroll,* for Respondent, submitted a brief.

"The court may, in the exercise of its discretion, deny an application for *mandamus* made after an unreasonable delay, especially where the delay has resulted prejudicially to the rights of the respondent or others interested.    The applicant may avoid the effect of this rule by showing good excuse for delay."    (26 Cyc. 393.)    The lower court having so used its discretion in this case, we submit its action in that behalf is not subject to review, both on principle and by decided authority.    "All proper presumptions will be indulged in favor of the correctness of the ruling in the court below" (*Id.,* 508), and its findings will not be disturbed unless clearly and manifestly unsupported by the evidence.    (*Dove* v. *Independent School Dist. of Keokuk,* 41 Iowa, 689; *West Virginia N. R. Co.* v. *United States,* 134 Fed. 198, 67 C. C. A. 220; *State* v. *Ward,* 69 Wash. 342, 124 Pac. 913.)    On appeal or error in *mandamus* proceedings the appellate court cannot consider the weight of conflicting evidence, or review the discretion of the court below in granting or refusing the writ, where it appears to have been lawfully exercised, and no abuse is shown.    (26 Cyc. 507.)    Delay is excused by the fact that the law is unsettled by reason of conflicting judicial decisions, and that litigation which will result in settling the law is pending by others.    (*People* v. *Lantry,* 48 App. Div. 131,

62 N. Y. Supp. 630; *People* v. *Scannell,* 27 Misc. Rep. 662, 59 N. Y. Supp. 679; *People* v. *Chicago,* 148 Ill. App. 96; *Hill* v. *Boston,* 193 Mass. 569, 79 N. E. 825.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is an appeal by defendant from a judgment awarding to the relator a peremptory writ of mandate commanding defendant to reinstate him in the office of policeman of the city of Butte, from which he alleged he was unlawfully removed by Charles P. Nevin, the predecessor of defendant. The statement of facts out of which the controversy grew may be found by reference to the opinion in *State ex rel. Rowling* v. *District Court,* 41 Mont. 532, 110 Pac. 86. The relator herein was not a party to that proceeding nor to another which resulted in a final determination that the relators therein were entitled to be restored to active duty. (*State ex rel. Rowling* v. *City of Butte,* 43 Mont. 331, 117 Pac. 604.) When by the final judgment entered in the latter proceeding a peremptory writ of mandate was awarded, the defendant, who had in the meantime succeeded Mayor Nevin, reinstated the relators in their offices and restored them to active duty. The relator herein had theretofore made repeated demand upon Mayor Nevin for reinstatement, but the demand had as often been refused. When the defendant made the order of reinstatement in obedience to the writ, the relator herein demanded that he also be reinstated. The demand was refused. Thereupon this proceeding was commenced. Referring to the statement in *State ex rel. Rowling* v. *District Court,* 41 Mont. 532, 110 Pac. 86, *supra,* it will be noted that the relator received his permanent appointment from Mayor Corby, the predecessor of Mayor Nevin, after undergoing examination and performing probationary service as required by the Metropolitan Police Law (Rev. Codes, secs. 3304–3312), and that he was one of the members of the police force peremptorily discharged by Mayor Nevin on December 18, 1909, and restored by him to active duty and retired to the eligible list without pay on April 28, 1910. Counsel for defendant base their contention that the

district court erred in awarding the writ, on two grounds, *viz.*: (1) That it affirmatively appears that the relator was guilty of laches in failing to apply for relief until the lapse of more than one year after his removal; and (2) that it is not shown by the evidence that he took and subscribed the oath of office required by law within ten days after he received his permanent appointment from Mayor Corby.

In support of their first contention counsel rely upon the rule that those who would avail themselves of the assistance of the [1] writ of *mandamus* must be prompt in demanding the enforcement of their rights, or they will be held to be barred by laches. The rule invoked by counsel has heretofore been recognized and enforced by this court. (*Territory ex rel. Tanner* v. *Potts,* 3 Mont. 364; *State ex rel. Beach* v. *District Court,* 29 Mont. 265, 74 Pac. 498.) The word "action," as used in the provisions of the Revised Codes relating to the time of commencing actions, is to be construed, when necessary, as including special proceedings of a civil nature (Rev. Codes, sec. 6476). An application for *mandamus* is classed as a special proceeding of a civil nature (Part III, Title I, Chap. II). The only limitation applicable to such proceedings is found in section 6451, which is a general provision applicable to all actions for which special provision is not otherwise made. It was pointed out in *State ex rel. Bailey* v. *Edwards,* 40 Mont. 313, 106 Pac. 703, that notwithstanding this provision, the courts may, in their discretion, deny relief when there has been a long delay in applying for it, in the absence of excuse or explanation. It was held that the propriety of granting relief in any case will be determined, not merely by the lapse of time permitted by the relator before making his application, but that the writ will go unless the delay has resulted in prejudice to the rights of the adverse party or the relief sought depends upon doubtful and disputed questions of fact. Accordingly, though the application in that case had been delayed for about ten months, in the expectation that the final judgment in the case of *State ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695, would settle and determine the question of law upon which the relator's

rights depended, the writ was allowed to go.  In this case the following facts are shown as excusatory of relator's delay: Mayor Nevin discharged him, with thirteen others, from the force at the same time.  The others at once instituted proceedings to secure their reinstatement.  The relator, acting upon the assumption that these proceedings would determine the controverted questions of law involved, notified Mr. Nevin that he would not acquiesce in his removal, and that he would hold himself in readiness to be restored to active service in case it was determined that Mr. Nevin's action was illegal.  When it was finally determined that Mayor Nevin was without authority to reduce the force by summary removals therefrom (*State ex rel. Rowling* v. *Mayor of the City of Butte,* 43 Mont. 331, 117 Pac. 604), the relator demanded of the defendant, who had in the meantime succeeded to the office of mayor, that he be reinstated. The defendant refused the demand.  The order reinstating the other members of the force was made May 31, 1911.  This proceeding was brought on June 15.  These facts are not disputed. Under the circumstances we do not think the district court abused its discretion in holding that the relator was not open to the imputation of laches, though he delayed his application for relief from April 28, 1910, the date of his final removal, to June 15, 1911, a period of more than thirteen months.  The institution of proceedings at any earlier date would not have hastened the settlement of the controversy as to the correctness of the action of Mayor Nevin in the first instance, or his power to reduce the force without authority from the city council.  The contention of counsel is therefore overruled.

In the Revised Codes we find these provisions:

"Sec. 3234.  Each officer of a city or town must take the oath of office, and such as may be required to give bonds, file the same, duly approved, within ten days after receiving notice of his election or appointment; or, if no notice be received, then on or before the date fixed for the assumption by him of the duties of the office to which he may have been elected or appointed.; but if anyone, either elected or appointed to ' office, fails for

ten days to qualify as required by law, or enter upon his duties at the time fixed by law, then such office becomes vacant. ＊ ＊ ＊

"Sec. 3248. Before entering upon office all officers elected or appointed must take and subscribe the constitutional oath of office."

It is alleged in the affidavit for the writ that the relator duly qualified as required by these provisions, both upon his appointment for the probationary term and upon his permanent appointment. These allegations are denied by the defendant. The evidence shows that the relator qualified regularly as a member of the police force upon entering upon the probationary term, but does not show that he again qualified when he received his permanent appointment. When questioned on this point he stated that he did not remember whether or not he had qualified, and the fact that he did so was not made to appear from the files in the clerk's office. The contention of counsel for defendant proceeds upon the assumption that the burden was upon the relator to show his title to the office, and that since he thus failed to show that he had qualified in conformity with the provisions of the statute, the presumption must obtain that the office became vacant at the expiration of ten days after his permanent appointment. Giving to section 3234, *supra,* the [2] force and effect which the legislature evidently intended it should have, we think that it should be construed to mean that the failure of the person elected or appointed to office to qualify within the time prescribed creates a vacancy in the office which may be filled by the appointing power. The courts are somewhat at variance in the construction of such statutes (Throop on Public Officers, sec. 173; 29 Cyc. 1388); but it seems to us inconceivable that when an office "becomes vacant," it may still be regarded as being occupied by a legal incumbent. The office of relator, therefore, must be deemed to have become vacant by his failure to take and subscribe the official oath as required by the statute, unless the taking of the official oath at the time of his appointment for the probationary term was sufficient.

Section 3 of the Metropolitan Police Law (Rev. Codes, sec. 3306) provides that all members of the police force shall first be appointed for a probationary term of six months, and there-

upon the mayor may appoint them to hold during good behavior or until by age or disease they become permanently incapacitated. Section 4 (sec. 3307) provides for the establishment of an examining and trial board. Section 5 (sec. 3308) requires all applicants to take an examination as to their legal, mental, moral and physical qualifications and ability to fill the position of member of the force. It then provides that no member shall be removed except upon charges preferred and after a trial by the examining and trial board. There is not anywhere in the statute any distinction made as to the official character of those serving as probationers and those serving under permanent appointment. Nor is there any special method provided for the removal of those members who are serving as probationers. Both alike seem to be regarded as members of the force. At the time the legislation was enacted, men who served as policemen were frequently appointed to service by the mayor and council without reference to their qualifications, except as to their party affiliations, very frequently those who were most ready to act as political agents of the city administration being given preference. They were expected to attend caucuses, primaries and conventions and to work at the polls at election time—not so much to preserve order as to influence voters in favor of the administration candidates and measures. For this reason with every change of administration there was a change of the personnel of the force in order to reward the partisans of the prevailing party or faction for their faithful and efficient service as political agents, rather than as guardians of the peace and safety of the citizen. Under these conditions inefficient service and corrupt practices were the rule rather than the exception. The purpose of the legislature in enacting the legislation was to remedy this condition by removing the police force as far as possible from the control of partisan political influences by putting it under civil service rules, and thus raise the standard of efficiency. (*State ex rel. Quintin* v. *Edwards, supra.*) While the language of section 3 seems to imply discretionary power in the mayor to appoint probationers to permanent service or otherwise to consider their places vacant when

this term is completed, yet when we keep steadily in view the purpose sought to be accomplished by the legislation, this cannot be its meaning.   If this section should be so construed, the result would be that the necessity for the creation of an effective, permanent force would depend entirely upon the personal views of him who happens at any time to occupy the office of mayor, and his partisan preferences could be exercised without restraint except that he would be compelled to appoint the probationers from the eligible list provided for in section 7.   In view of the [3] purpose sought to be accomplished, we think it was the intention of the legislature to make it obligatory upon the mayor to appoint each probationer to permanent service at the expiration of six months, unless during this period he has demonstrated his lack of fitness for such service, and that, being a member of the force, he may not be removed except upon charges made and trial had before the examining and trial board as in other cases, under the provisions found in sections 5 and 6 (secs. 3308, 3309). This conclusion seems necessary in view of the fact that those appointed to probationary service are deemed to be members of the force and that no other method is provided by which they may be removed from it.   The permanent appointment, there-[4] fore, is nothing more nor less than a confirmation of the original appointment, and does not mark the beginning of a new term of service by the appointee as though he had been appointed for another term or to another office.   In other words, the appointee has fulfilled the conditions attached to his probationary appointment, *viz.:* the rendering of efficient service for the period of six months, and is, by operation of law speaking through the mayor, continued in the same office.   It was therefore not necessary for the relator, upon receiving his permanent appointment, to qualify by again taking and subscribing the official oath.

We know of no authority directly in point; but it has, we believe, been the uniform practice in this state since its foundation for the lieutenant governor, when he has succeeded to the office of governor, temporarily or for an unexpired term, to enter upon the discharge of his duties without taking a new oath.

Indeed, such an act would be an idle ceremony, since in contemplation of the Constitution the qualification for the office for which he is elected is a qualification for the office of governor to which, upon certain conditions, he may by operation of law succeed.  (*Opinion of Justices,* 70 Me. 593.)  The practice, we think, should control here.

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.

