STATE EX REL. BAILEY, RESPONDENT, *v.* EDWARDS ET AL., APPELLANTS.

(No. 2,799.)

(Submitted November 30, 1909.  Decided January 7, 1910.)

[106 Pac. 703.]

*Cities and Towns—Police Department—Civil Service Statutes—Police Captain—Member of Force—Mandamus—Laches.*

Cities and Towns—Police Department—Captain—Civil Service Statute.
  1. *Held,* that a police captain is a "policeman," and that upon appointment, after having served the probationary term of six months, under the metropolitan police law (Laws of 1907, Chap. 136; Revised Codes, secs. 3304–3317), which Act makes no distinction between officers or members of different rank relative to their duties as policemen, and requires all to be selected and appointed in the same manner, he is secure from removal from office except as provided in the Act.
*Mandamus*—Laches—When Writ may Issue.
  2. While the writ of mandate may be denied where there has been a long delay in making the application, in the absence of any excuse or explanation, the propriety of issuing it in any particular case must be determined upon the facts of that case; and if the delay has not resulted in prejudice to the rights of the adverse party, and the relief sought does not depend upon doubtful and disputed questions of fact, the writ may go.
Same.
  3. Relator, and certain other members of the defendant city's police force, after appointment under the provisions of the Police Commission Bill (Laws 1907, Chap. 136), were removed from office contrary to the provisions of said Act. One of the latter instituted *mandamus* proceedings to compel his reinstatement, relator and the other ousted members agreeing to assist him in the payment of the necessary expenses incident to the prosecution of the action, upon the assumption that its determination would adjudicate the rights of all. When it became apparent that this result would not follow, the relator, about

ten months after his removal, commenced separate proceedings in *mandamus.* *Held,* under the rule stated in paragraph 2 above, that the delay in instituting the proceedings could not prejudice the rights of defendant and that the district court properly assumed jurisdiction.

(MR. JUSTICE HOLLOWAY dissenting.)

*Appeal from District Court, Lewis and Clark County; Frank Henry, Judge of the Sixth Judicial District, presiding.*

APPLICATION for *mandamus* by the state, on the relation of Leonard Bailey, against Frank J. Edwards, as mayor of the city of Helena, Montana, and others. From a judgment awarding the writ, and from an order denying a motion for a new trial, defendants appeal. Affirmed.

*Mr. Edward Horsky,* submitted a brief in behalf of Appellants, and argued the cause orally.

The office of a police captain is created solely by ordinance. It is one, the appointment to which must be by and with the consent of the council; and as such falls squarely within the first portion of section 3220, Revised Codes, conferring the power to abolish any office, "the appointment to which is made by the mayor, with the advice and consent of the council." (Counsel then presents an extended argument in support of his contention that a substantial distinction exists between a policeman, a member of the police force, and a police captain, a member of the police department, and that the statute recognizes such distinction. A brief digest thereof or fragmentary extracts therefrom would be of little value, hence it is omitted.) In further support of the distinction between those who are officers in charge or supervision of the force, and those who are members of the force proper, we refer to the cases of *State ex rel. Crowe* v. *Vallins,* 140 Mo. 523, 41 S. W. 887; *State ex rel. Belt* v. *Kizer,* 14 Wash. 185, 44 Pac. 156. The only persons who are entitled to life tenure (granting, for the sake of argument, the constitutionality of such section) are members of the police force (not officers of the department, nor the members thereof outside of the police force; nor the officers of the

:force). The legislature has carefully, guardedly, clearly, and designedly employed only the term "members of the force" in reference to tenure. (Revised Codes, sec. 330ᴏ.)

Relator was guilty of laches. In *People* v. *Keating*, 49 App. Div. 123, 63 N. Y. Supp. 71, it was held that "Where relator was removed from a public office, the fact that he had been informed that the law as to reinstatement was unsettled, and that applications for reinstatement were pending and undetermined, did not excuse his delay in not making his application for *mandamus* for reinstatement until nearly nine months after his removal." (See, also, *People* v. *Board of Health*, 56 Misc. Rep. 261, 106 N. Y. Supp. 923; *People* v. *Justice's Court*, 78 Hun, 334, 29 N. Y. Supp. 157.)

*Mr. Wm. T. Pigott,* and *Mr. Massena Bullard,* filed a brief in behalf of Respondent. Oral argument by *Mr. Pigott.*

"Police officer" is a term embracing the body of men chosen to preserve the good order of a municipality and to discharge the duties devolving upon peace officers of the state. (*City of Florence* v. *Brown,* 49 S. C. 342, 26 S. E. 880, 27 S. E. 273; *Allor* v. *Wayne Co.,* 43 Mich. 76, 4 N. W. 492; 31 Cyc. 900, 901.) This term, as well as "member of the police force," as used in the police bill, includes every policeman, whether he be called "chief of police," "captain of police," "sergeant of police" or simply "patrolman," or "policeman," except in those instances where the bill industriously distinguishes between the members who have control over other members and the members who have no such control. "Policeman" is generic, and applies to every member of a police force, "be his rank or station what it may." (31 Cyc. 901.) "Police officer" is one of the staff of men employed in cities or towns to enforce the municipal police, *i. e.,* the laws and ordinances for preserving the peace and good of the community. (31 Cyc. 902.) Chief of police, sergeant of police, captain of police, and patrolman are but species of the *genus* policeman. It matters not what the name is—the substance only is of moment.

The omission of Bailey to begin this proceeding until the lapse of ten months from the time of his discharge, or attempted discharge, would not, even if unexplained, constitute laches. The only cases cited by appellant on this point are from the state of New York, where the statute prescribes that an application for writ of *certiorari* must be made within four months from the time the right accrued—the courts of that state declaring that, by analogy, the same limit should control *mandamus;* but even in New York the four months' period of limitation is inapplicable to cases where a reasonable explanation is given for the omission to institute proceedings within the prescribed period. (See *People* v. *Lantry,* 48 App. Div. 131, 62 N. Y. Supp. 630; *People* v. *Scannell,* 27 Misc. Rep. 662, 59 N. Y. Supp. 679.) To defeat the right to *mandamus,* the laches must be gross. (*Savannah* v. *State,* 4 Ga. 26.) In support of our contention, we cite the cases referred to in the note to *State ex rel. Moyer* v. *Baldwin,* 77 Ohio St. 532, 83 N. E. 907, reported in 19 L. R. A., n. s., 49, and the cases referred to on page 66, entitled "Diligence"; to the cases referred to in 26 Cyc. 392-394; and to cases cited in 18 Am. & Eng. Ency. of Law, 119-121; *Hill* v. *Boston,* 193 Mass. 569, 79 N. E. 825; *Duke* v. *Turner,* 204 U. S. 623, 27 Sup. Ct. 316, 51 L. Ed. 652.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Appeals from a judgment awarding the relator a peremptory writ of *mandamus,* and from an order denying defendant's motion for a new trial.

At the time of the passage and approval of the Act of the legislative assembly called the "Police Commission Bill" (Chapter 136, Sessions Laws of 1907 [Revised Codes, secs. 3304-3317]), the relator was a member of the police force of the city of Helena. When the police department of the city was reorganized and constituted under the Revised Ordinances of the city in pursuance of the statute, he applied to the examining and trial board of the police department, and successfully un-

derwent an examination for a position upon the reorganized police force. He was appointed and served during the time of probation, and was thereupon appointed to the position of police captain, wherein he continued to serve until he was discharged therefrom by the defendant as mayor of the city. The mayor acted under authority supposed to be conferred upon him by Ordinance No. 736 of the ordinances of the city, which was declared invalid in *State ex rel. Quintin* v. *Edwards, ante,* p. 287, 106 Pac. 695. The questions for decision in this case grow out of three contentions, stated in counsel's brief as follows: (1) That the appointment of the relator as police captain for a life tenure, both under the police bill and section 50 of the ordinance, is null and void, being in contravention of section 6, Article XVI, Constitution of Montana; (2) that the city council had the power to abolish and did abolish the office of relator; and (3) that the laches of relator in commencing this action precludes the relief sought by him.

The second one of these contentions was determined in the decision in *State ex rel. Quintin* v. *Edwards, supra,* adversely to the defendant. On this point that decision is conclusive.

In support of the first contention, it is argued that there is a substantial distinction between a policeman, a member of the police force, and a police captain, a member of the police department, not only in rank, but in the duties which he is required to perform, and that, as a police captain is not technically a member of the police force, he is merely a police officer, and hence that the ordinance permitting his appointment for an indefinite term and the appointment thereunder are void. Counsel enters into an elaborate argument to demonstrate that the statute recognizes this distinction, but his reasoning is more plausible than convincing. The police force of a city is the body of men appointed to preserve the peace and good order of the city. (31 Cyc. 901.) A police officer "is one of the staff of men employed in cities and towns to enforce the municipal police; *i. e.,* the laws and ordinances for preserving the peace and good of the community." (*Id.,* 902.) The term "policeman" is generic, and includes every member of the police force,

whatever may be his grade or rank. (*Id.,* 901; *State ex rel. Quintin* v. *Edwards, supra.*) Without pausing to discuss the technical distinction between the expressions "police department" and "police force" and ascertain the difference in the meaning assigned to them, as used in the various sections of the statute, it is sufficient to say that a police captain is a policeman, just as the captain of a military company is a soldier, and the accident of his superior rank does not change or alter his duties, except in so far as it imposes upon him the additional duty to superintend and direct. The statute (section 3308) assumes that there may be distinctions in the rank of members of the police force; but it makes no distinction between officers or members of different rank as to their duties as policemen, and requires all to be selected and appointed in the same way. That the relator was originally appointed a member of the force with the rank of captain does not in the least diminish his duty to preserve the peace and good order of the municipality; nor does it change his obligation to the public to discharge the duties imposed upon all policemen under the laws of the state. The mayor and city council may adopt rules and regulations for the control and discipline of the force, providing for different grades in the service, but no regulation adopted with this end in view can make a policeman not a policeman. Otherwise, promotion from the ranks to a higher office as a reward for meritorious service as a policeman or patrolman would entirely destroy the fitness of the one promoted to perform his duty to the state. In other words, promotion would result in restricting the duties of one promoted, rather than to add to them and render them more important. There is no merit in this contention.

The time which elapsed after the removal of the relator until he brought this proceeding was a few days more than ten months. It is contended by counsel that this delay was inexcusable and concludes relator's right to relief. Under section 6451, Revised Codes, actions for relief for which a limitation is not elsewhere prescribed may be brought within five years. We find no other limitation applicable to a proceeding of this

character.   Section 6476 declares that the word ''action,'' as. used in the title relating to the time within which actions may be brought, shall, when necessary, be construed to include special proceedings of a civil nature.   While the court may in its. discretion notwithstanding these provisions deny an application for a writ of *mandamus* where there has been a long delay in making it, in the absence of excuse or explanation (*State ex rel. Beach* v. *District Court*, 29 Mont. 265, 74 Pac. 498), the propriety of issuing it in any particular case will be determined upon the facts of that case; and, if it is apparent that the delay has not resulted in prejudice to the rights of the adverse party, and that the relief sought does not depend upon the determination of doubtful and disputed questions of fact, the writ may go.   (High on Extraordinary Legal Remedies, sec. 30b.)

It appears from the evidence that at the time the action entitled *State ex rel. Quintin* v. *Edwards* was instituted, the relator and his associates assumed that it would result in a determination of all the questions affecting their rights, as well as those of Quintin.   To avoid the expense of four separate actions, they agreed with Quintin to assist him in the employment of counsel and the payment of other expenses necessary to prosecute his action.   When it became apparent that the litigation would continue, and they were unable, on application to counsel for defendant, to obtain a stipulation that the rights of all should be determined by the result in that case, they thereupon brought their separate actions.   While it may be the result that the relator cannot upon his restoration to office recover from the city full compensation for the time during which he has been out of service—and upon this question we do not express any opinion—no prejudice will be done to the defendant by sustaining the action, nor will any confusion be wrought in the administration of the affairs of the city.   The facts upon which he bases his claim for relief are not disputed.

The other contentions made in the brief are not of sufficient merit to demand special notice.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH concurs.

MR. JUSTICE HOLLOWAY: I dissent for the reasons given in my dissenting opinion in *State ex rel. Quintin* v. *Edwards, ante,* p. 287, 106 Pac. 695.

Rehearing denied February 4, 1910.