STATE EX REL. PHILLIPS, RESPONDENT, v. FORD, GOVERNOR, ET AL., APPELLANTS.

(No. 8461.)

(Submitted January 6, 1944. Decided May 10, 1944.)

[151 Pac. (2d) 171.]

*Mr. R. V. Bottomly,* Attorney General, *Messrs. George S.*

*Smith* and *Charles I. O'Donnell, Jr.,* Assistants Attorney General, for Appellants, submitted an original and a reply brief; *Mr. Smith* argued the cause orally.

*Mr. Walter Aitken, Mr. Albert H. Angstman* and *Mr. Lester H. Loble* for Respondent, submitted a brief, and argued the cause orally.

HONORABLE JEREMIAH J. LYNCH, District Judge, sitting in place of Mr. Justice ADAIR, disqualified, delivered the opinion of the court.

This is an appeal by defendants from a judgment awarding to the relator a peremptory writ of mandate commanding them, among other things, to reinstate him in the position of professor of history and political science at Montana State University, from which he alleges he has been unlawfully excluded by them.

It appears from the record that the defendants constitute the State Board of Education of the State of Montana, which will hereafter be referred to as the board, and that George Finlay Simmons was the president of Montana State University from January 1, 1936, to September 1, 1941, and that the relator, Paul C. Phillips, was a professor of history and political science at the institution from September, 1915, to October 2, 1937. His connection with the university began, however, in September, 1911, as an instructor in history. On the 27th day of September, 1937, Evelyn Flannery, a young woman who had theretofore worked on a historical works project of WPA under the direction of the relator, made an affidavit charging him with an attempted rape on her person. Warren H. Stillings, her brother-in-law, joined in the affidavit which was then placed in the hands of President Simmons. At that time Flannery and Stillings demanded a large sum of money of Phillips and his resignation as professor at the university in satisfaction of the alleged wrong. Simmons and Phillips conferred on the 27th and once or twice afterward concerning the charge and the probable consequences to the latter. While Phillips at all times denied the charge it was agreed between them that it created a difficult

and disagreeable situation not only for Phillips but for Simmons and the university as well. Realizing that the occasion required the services of counsel, Phillips on or about the 28th day of September retained E. C. Mulroney, an attorney at law, and the law firm of Pope, Smith & Smith to look after his interests. On the 2d day of October, 1937, when he was past the age of fifty-three, he delivered to President Simmons his written resignation as follows:

"Missoula, Montana
October 1, 1937

President George F. Simmons
Montana State University
Missoula, Montana
Dear Sir:

The charges which have been made against me and about which you are familiar seriously impair my usefulness to Montana State University. After twenty-six years of continuous service in the institution and in view of my constant and continued loyalty to the university, my deep concern for its best interests and my high regard for the esteem in which it is held by the people of the state, I feel that it is my duty, and therefore of my own accord, I have decided at this time to sever my relations with it. I have employed counsel to prove the falsity of these charges and am going to devote my full time to this end. Until my name is cleared, my presence on the staff can only cause embarrassment to the university. I therefore tender my unqualified resignation, effective as of this date, as professor and executive Vice-President, with the request that you transmit the same to the Montana State Board of Education.

Very sincerely yours,

Paul C. Phillips."

Thereafter and up to the 13th day of December, 1937, he rendered no service to the university.

The allegation in the amended petition and the finding of the court to the effect that the resignation was the result in

part of coercion used on Phillips by Simmons is not sustained by the evidence. By that we mean that the evidence clearly preponderates against the finding and does not support the allegation. At the time the resignation was delivered and for several days prior thereto Phillips was in frequent consultation with his four attorneys, two of whom were old practitioners, eminent in their profession, and all of whom were learned in the law and intent on doing the best possible for their client. Believing it was the wisest course to pursue after a consideration of all the circumstances they advised him to resign but with the understanding that if he were afterwards vindicated in the courts President Simmons would recommend his reinstatement to the board. The resignation which was prepared by his attorneys followed. It is hard to escape the conclusion that the resignation came as the result of advice from his counsel and not otherwise. (*Walker* v. *Board of Directors,* 159 Or. 177, 78 Pac. (2d) 618; *Columbia Sav. Bank & Trust Co.* v. *True,* 108 S. C. 56, 93 S. E. 389; *Palmer* v. *Shields,* 71 Wash. 463, 128 Pac. 1051; *Rhodes* v. *Owens,* 101 Wash. 324, 172 Pac. 241.) The point is of no particular importance, however, as we shall show later.

It further appears from the record that on or about the 2d day of October, Phillips on the advice of his counsel brought an action for slander or libel arising out of the Flannery charge against Stillings in the district court of Missoula County. The first trial thereof before a jury resulted in a disagreement. The second trial before a jury resulted in a verdict favorable to the plaintiff and judgment in conformity thereto was on the 29th day of April, 1938, rendered and entered.

On the 12th day of December, 1937, Evelyn Flannery retracted the charge which she had theretofore made against Phillips in the following language:

"State of Montana

County of Missoula, SS.

Evelyn Flannery, being first duly sworn, on oath, deposes and says: that on the 27th day of September, 1937, I made a certain written statement, signed before a H. C. Christiansen, charging

Dr. Paul Phillips with attempting a criminal assault upon my person and also that Dr. Phillips is viciously and criminally immoral. Said written statement is not true; Dr. Paul Phillips did not make any criminal assault upon my person, nor has he ever been guilty of any impropriety toward me. During all the time I have known Dr. Paul Phillips he always treated me with courtesy and respect. At the time I signed said written statement I was in poor health and did not fully understand and realize the full import of the said statement.

Evelyn Flannery

Subscribed and sworn to before me this 12th day of December, 1937.

Fred W. Schilling

Notary Public for the State of

(Notarial Montana, residing at Missou-

Seal) la, Montana. My commission

expires August 10, 1939.''

The retraction was on that day handed by her counsel, Fred W. Schilling, to Phillips' counsel, Messrs. Mulroney, Pope, Smith and Smith. The court found and properly so we think under the evidence that the document was afterwards on the 12th day of December delivered to President Simmons.

The court found also that on the 12th day of December, 1937, Phillips signed a withdrawal of his resignation prepared by his attorneys and that on the same day the paper was delivered to President Simmons. The court found, too, that in the morning of the 13th of December, 1937, and before the board opened its meeting, Phillips handed to Simmons another withdrawal made by himself as follows:

''Missoula, Montana, December 12, 1937

Dr. George Finlay Simmons
President Montana State University
Missoula, Montana
Dear Dr. Simmons:

The retraction by Miss Evelyn Flannery of the charges made

against me, dated September 27, 1937, which charges led me to submit my resignation in order to save the University from embarrassment pending the outcome of a slander suit which I have instituted, has completely changed the situation. As my resignation has not been accepted by the State Board of Education I hereby withdraw said resignation and ask for reinstatement as professor of history.

Respectfully submitted,

Paul C. Phillips.''

These findings are, we believe, amply sustained by competent evidence.

The record further discloses that the board met in the Student Union building in the forenoon of December 13, 1937, and in a more or less informal way accepted the resignation. Apparently the withdrawals were not then called to the board's attention. Phillips upon learning of the action of the board as it was about to recess requested Messrs. Mulroney and Pope to present his case for reinstatement at the afternoon session. They did so but nothing came of it.

The relationship between the board and Phillips was that of employer and employee. It was contractual in character. (11 C. J. 995; 14 C. J. S., Colleges and Universities, sec. 21.) According to the pleadings and under the rules and regulations of the board he held his position under what is known in scholastic parlance as permanent tenure. (*State ex rel. Keeney* v. *Ayers,* 108 Mont. 547, 92 Pac. (2d) 306.) Under a provision of the rules and regulations of the board in force on the 2d day of October, 1937, and up to and including the 13th day of December, 1937, the president, whoever he may be, acted ''as the medium of communication between the board and the officers and organization of the university.'' The board thereby authorized professors of the university to deliver communications of this kind to the president for it, and the relator was entitled to rely upon that authorization, as he manifestly did. When Phillips caused his withdrawal of resignation to be delivered to Simmons

on the 12th day of December and actually handed his second withdrawal of resignation to him in the morning of the 13th day of December it was as if he had delivered the withdrawal to the board itself. It was the duty of Simmons to call the attention of the board to the withdrawal before it assumed to act on the resignation. Acceptance of the resignation was under the circumstances abortive, the resignation not being legally before the board for action. A tender of resignation is nothing more than an offer to resign, that is to terminate the contract of employment. Being a mere offer, relator was entitled to withdraw it at any time before it was accepted by the board. (*Shade* v. *Board of Trustees*, 21 Cal. App. (2d) 725, 70 Pac. (2d) 490; *Curttright* v. *Independent School Dist.*, 111 Iowa 20, 82 N. W. 444; *Le Masters* v. *Board of Education*, 105 W. Va. 81, 141 S. E. 515; 56 C. J. 408.) A contract of employment of the kind involved here becomes effective when the appointee has accepted. So also an offer by the appointee to terminate an appointment by resignation is effectual only when the resignation is duly accepted by the body whose duty it is to make or terminate the appointment. (*Trustees of State Normal School* v. *Wightman*, 93 Colo. 226, 25 Pac. (2d) 193.)

The rules and regulations of the board also provided that the president ''shall make nominations and reports of appointments, promotions, salaries, transfers, suspensions, dismissals and resignations of administrative officers, members of the instructional and scientific staffs and other employees of * * * the university.'' Counsel for defendants have argued that because of this provision President Simmons was vested with authority to accept the resignation of Phillips, an authority which he claims he exercised on the 2d day of October, 1937. So far as resignations are concerned the provision merely means that the president must report the same to the board, not that he may accept them. Indeed, it is alleged in the amended petition that on the 13th day of December, 1937, the board purported to accept the resignation and in the amended answer thereto it is admitted that on the 13th day of December, 1937, the board did

accept the resignation. The record discloses, too, that at a meeting of the board held on the 11th day of July, 1938, it refused to accept without investigation the resignation of the head teacher at the school for the deaf and blind and again that at a meeting held on the 11th day of December, 1939, it refused to accept the resignations of two professors from the faculty of the university but decided to consider them at some future time. In acting thus it gave a practical and correct demonstration of its powers and responsibilities under the law and showed a proper appreciation of its rights and obligations under the contracts it had with these men. If the provision in question conferred on the president the power to make appointments of administrative officers, members of the instructional and scientific staffs and other employees of the university it conflicted partly with section 836 and wholly with section 853, Revised Codes of Montana, 1935.

A rule and regulation of the board more in consonance with law is that which has been in existence since 1922 and which is pleaded in the amended petition and admitted in the amended answer thereto. It provides that ''any administrative officer or any member of an instructional or scientific staff may be removed at any time by the Board (a) after a hearing (b) on the recommendation of the Chancellor; provided, that with such recommendation there shall be transmitted a statement from the chief executive of the institution, station or division with which such officer or staff member is connected, and also a copy of any report of the Committee on Service prepared in accordance with provisions of Section 8 below. In cases of inefficiency, reprehensible conduct or insubordination, the Chancellor may suspend any administrative officer or member of the institutional or scientific staffs until the next regular or special meeting of the Board. In such cases the payment of salary shall cease at the time of suspension. If the charges made are not sustained by the Board, salary shall be paid for period of suspension. The Board may direct the suspension of an administrative officer or member of any instructional or scientific staff

pending an investigation by the Chancellor of charges presented.'' Under somewhat different circumstances it could well be followed in a case of this kind.

Defendants contend that because it is alleged in the amended petition that the resignation of Phillips was brought about in part at least by the fraud of Simmons the action is barred by the provisions of subdivision 4 of section 9033, Revised Codes of Montana, 1935. It is admitted in the reply herein but not otherwise shown that the action was begun on the 29th day of September, 1942. The contention is without merit. The proceeding is not based on Simmons' alleged fraud and no fraud is charged against the defendants. Fraud is alleged apparently for the purpose of showing that the resignation was not the free and voluntary act of Phillips. The action was instituted to compel the defendants as the State Board of Education to restore Phillips to his former position at the university. Subdivision 4 of section 9033, therefore, has no application. The case falls within the provisions of section 9041, Revised Codes of Montana, 1935. (*State ex rel. Bailey* v. *Edwards,* 40 Mont. 313, 106 Pac. 703; *State ex rel. Bennetts* v. *Duncan,* 47 Mont. 447, 133 Pac. 109.)

Defendants further contend that relator has been guilty of laches and for that reason should be denied relief. Laches is the failure or neglect for an unreasonable and unexplained length of time to do what in law should have been done. (21 C. J. 210; 30 C. J. S., Equity, sec. 112.) It is inexcusable delay in enforcing one's rights which works to the detriment of the other party. (*Parks* v. *Classen Co.,* 156 Okl. 43, 9 Pac. (2d) 432.) The court may in its discretion, notwithstanding the statutory limitation, deny an application for the writ of mandamus where there has been long delay in making it, in the absence of excuse or explanation. The propriety of issuing it in any particular case will be determined upon the facts of that case; and if it is apparent that the delay has not resulted in prejudice to the rights of the adverse party, and that the relief sought does not depend upon the determination of doubtful and disputed ques-

tions of fact, the writ may go. (*State ex rel. Bailey* v. *Edwards,* supra.) In order to avoid any misunderstanding it may be proper to add here that no more is required of the applicant than that he establish the material allegations of his complaint by a preponderance of the evidence. (Sections 10530 and 10616, Rev. Codes of Montana 1935; 38 C. J. 914.)

What excuse has the relator given for his failure to institute this suit until the lapse of four years and nine and a half months from the day the board assumed to accept his resignation? The record discloses that from the 13th day of December, 1937, to the 15th day of September, 1942, the relator was assiduous in his efforts to obtain reinstatement. At his instance the matter was before the board for consideration at its meetings in July and September, 1938, September, 1939, September, 1940, July and December, 1941, and July and September, 1942. Some members of the board, as well as President Simmons and his successors, Acting President Leaphart and President Melby, encouraged him in the belief that restoration to his position would ultimately result. Not until after the meeting in September, 1942, did he abandon hope of favorable action on the part of the board. During all the time, too, the vacancy remained unfilled. There is another reason in addition to what has just been said why the defense of laches is unavailing in this case. It does not appear that the delay placed the defendants at any disadvantage in meeting the situation inherent in the suit. (*State ex rel. Brink* v. *McCracken,* 91 Mont. 157, 6 Pac. (2d) 869.) The court did not err in holding that under the circumstances laches may not be imputed to the relator.

Defendants further assert that relator abandoned his employ- ment and therefore is not entitled to any relief herein. As has been already shown his resignation could be withdrawn at any time before it was acted on by the board, and a resignation of his position subsequently withdrawn before it could be acted on cannot be construed as an abandonment of it. (56 C. J. 408; *Curttright* v. *Independent School District,* supra; *Le Masters* v. *Board of Education,* supra.) Moreover, relator had

scarcely signed his resignation and made delivery of it when he became active in his efforts to bring about restoration to his position.

At the trial relator offered evidence regarding the damages he sustained on account of attorney's fees and incidental expenses paid or to be paid by him. His counsel, over the objection of defendants that the evidence was incompetent, irrelevant and immaterial under the pleadings, there being no claim therein for damages by way of attorney's fees or otherwise, was permitted to testify that he had an agreement with relator for $50 for each day's work done by him on the case and for reimbursement for his necessary expenses; that up to this time, to-wit, the 17th day of February, 1943, he had put in 33 days on the case, making in all $1,650 so earned, and had expended on traveling, hotel room, meals, etc., in connection with the case, the sum of $134.40. Relator did not ask for leave to amend when the objection was made and did not follow the procedure outlined in *State ex rel. Golden Valley County* v. *District Court,* 75 Mont. 122, 242 Pac. 421, 422, by filing a bill of particulars at or before the submission of the case to the court for consideration and decision. But the court gave effect to this testimony in certain of its findings and conclusions which entered into and became a part of the judgment and in doing so erred to defendants' prejudice. The Golden Valley County decision correctly states that in a mandamus proceeding "the right to recover damages must be claimed and proof submitted in support thereof before the conclusion of the hearing." Insofar, however, as the decision indicates that a bill of particulars, filed before the conclusion of the trial, may serve as a substitute for a claim for damages in relator's complaint or affidavit, it is now overruled. "A bill of particulars is not in itself a pleading." (1 Bancroft's Code Pleading, sec. 485, p. 701.) "The sole office of the bill of particulars is to give the adverse party information which the pleadings, by reason of their generality, do not give." (*State* v. *Wong Sun,* 114 Mont. 185, 133 Pac. (2d) 761, 763.) Where the damages in mandamus rest upon a contract, express

or implied, they should be pleaded in the complaint or petition as in any other case and afterwards at the trial established by competent evidence; otherwise they should not be allowed by the court. (38 C. J. 880; 16 Cal. Jur. 880; *Colthurst* v. *Fitzgerald,* 56 Cal. App. 740, 206 Pac. 471; *Parr* v. *Sexson,* 56 Colo. 491, 138 Pac. 768.)

In open court on the 30th day of April, 1943, there being ▮▮▮▮ present relator and his counsel and defendants' counsel, the relator, before the signing of the judgment herein but nine days after the filing of the court's findings and conclusions, presented to the court for allowance and approval a bill of particulars so-called in which he claimed not only the sum of $1,784.40 theretofore covered by testimony objected to because not within the pleadings, but also the further sum of $600 earned in the case by his counsel after the 17th day of February, 1937, and up to and including the 30th day of April, 1943, and the sum of $18.30 expended by him on railroad and taxicab fares, meals, etc. Counsel for defendants objected to consideration thereof by the court upon the ground and for the reason that it was incompetent, irrelevant and immaterial under the pleadings and was not based upon any pleading filed herein prior to the close of the evidence and submission of the matter to the court, and particularly objected to the item of $18.30 for the reason that the same cannot properly be awarded as costs. The court overruled the objection and approved and allowed the claim in the form presented. The ruling of the court was erroneous. The objection should have been sustained. No application for leave to reopen the case to permit the amendment of the pleadings and the introduction of further evidence was made by relator and no evidence was offered or received in support of the items contained in the bill of particulars. Furthermore, the defendants were given no opportunity to contest the additional items by cross-examination or otherwise.

Finally, with reference to the $1,784.40 testified to at the trial over the objection that it was not within the pleadings, it cannot be considered that the defendants should then have contested,

by cross-examination or other evidence, the items making up that amount, since their objection was manifestly well taken and they were entitled to rely upon it.

Over seasonable and pointed objection on the part of defendants the court allowed relator to offer evidence to the effect that had he been permitted to serve as professor at the university from the middle of December, 1937, to the 1st day of March, 1943, at the fixed salary of $3,600 per year, he would have earned the sum of $21,633 including interest. The court erred in this respect. In this jurisdiction it is the rule, long established, that the damages contemplated in section 9858, Revised Codes of Montana 1935, are such damages as are incidental to the proceedings themselves and not those which have arisen out of the prior preclusion or deprivation which the writ itself was invoked in part to redress. (*Bailey* v. *Edwards,* 47 Mont. 363, 133 Pac. 1095; *State ex rel. Golden Valley County* v. *District Court,* 75 Mont. 122, 242 Pac. 421; *State ex rel. Barry* v. *O'Leary,* 83 Mont. 445, 272 Pac. 677; *State ex rel. O'Connor* v. *McCarthy,* 86 Mont. 100, 282 Pac. 1045.) The court in its conclusions of law undertook to cover the matter of accrued salary and in its judgment assumed to fix the amount thereof at the sum of $22,400 and to provide for the manner of its payment.

The brief of appellants contains 105 specifications of error, some of which are well taken but are not of sufficient importance to affect the right of relator to restoration to his former position, and others of which are without merit. Some of them relate to improper admission of testimony, others of them to findings of the court not sustained by the evidence and still others of them to the refusal of the court to make certain findings requested by appellants. Many of these specifications, whether particularly mentioned or not, have been dealt with in what has been already said. No useful purpose could be served by considing them seriatim or even in groups. True the court admitted some incompetent or irrelevant testimony and made a few findings which did not have evidentiary support. But "the court must, in every stage of an action, disregard any error or defect

in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect.'' (Sec. 9191, Rev. Codes.) Here the judgment in so far as it decrees that a writ of mandate issue commanding the defendants as the State Board of Education to reinstate the relator in his position of professor of history and political science at the university is fully supported by certain of the court's findings and these findings are, in turn, sustained by competent and satisfactory evidence.

The cause is remanded, with directions to the district court to modify the judgment by striking therefrom all reference to the matter of salary accruing to relator, as well as the manner of its payment, and all reference to the matter of attorney's fees and incidentals, as well as the manner of their payment, and also what is referred to as ''conclusion of law No. 4,'' to the effect that Simmons coerced Phillips into resigning, and as thus modified it will stand affirmed. Each party will pay his costs incurred in this court.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANDERSON and MORRIS concur.

MR. JUSTICE ERICKSON dissenting in part:

I concur in the principal result reached by the majority but I cannot agree on two points covered in the majority opinion. First, I cannot agree that there is no evidence tending to show coercion on the part of Simmons practiced in obtaining relator's resignation. The lower court specifically found that coercion as a matter of fact and to my mind there is evidence supporting that conclusion. Where there is evidence supporting the lower court's conclusion, this court of course has no power to delete the lower court's finding.

I dissent also from the court's ruling in which it denies to the relator damages by way of attorney's fees and expenses, allowable under section 9858, Revised Codes 1935. The record shows and there can be no question but that relator had to employ counsel in order to prosecute this action; that as a matter of fact

he was successful in the trial court and here only because of the great diligence of eminent counsel employed by him. Proof was adduced in the trial court showing the obligations incurred by the relator in the way of attorney's fees and his expenses in connection with the prosecution of these proceedings. As I understand the majority opinion the rule now adopted in this jurisdiction is that before damages by way of attorney's fees and expenses in a mandamus action may be recovered, it is necessary for the relator to specially plead in his bill these damages. But prior to the decision in the instant case that was not necessary, nor is there any provision in the statute requiring it. Relator's principal counsel, an eminent lawyer of long standing and extensive practice before the bar of Montana, when he drew the bill in this case, could very easily have pleaded these damages and his failure to do so was of course dictated by the state of the law in Montana at the time he entered the case. Under *State ex rel. Golden Valley County* v. *District Court*, 75 Mont. 122, 242 Pac. 421, 422, this court had expressly and directly said that it is unnecessary to specially plead these damages. In speaking of section 9858, Revised Codes, 1921, now section 9858, Revised Codes, 1935, this court said in that case, speaking through Mr. Justice Galen and concurred in by Mr. Chief Justice Callaway and Associate Justices Holloway, Matthews and Stark: "The statute is silent as to the proper course to be pursued in making claim for the damages authorized to be awarded, and with propriety some future legislative assembly may specifically outline the proper procedure. In the absence of definite direction as to the proper practice in such cases, we think the applicant for the writ may, with propriety, make claim in his original application for such damages as can then be reasonably anticipated; or the course pursued in the instant case, by filing in the action a bill of particulars, covering the several items of damages claimed, would be unobjectionable if adopted before conclusion of the hearing. Where the method of procedure is not definitely pointed out by a statute conferring a specific right, any suitable mode of procedure may

be resorted to which may appear best to conform to the spirit of the law. (Sec. 8882, Rev. Codes 1921)''.

In this case the bill of particulars was not filed until after the conclusion of the proceedings in the court room of the district court and the majority points out that relator for that reason did not comply with the requirement of this prior decision of our court. This is not the case for two reasons: First, because in the language above quoted this court did not suggest that the only procedure to be followed was that followed in that case. It specifically pointed out that any suitable mode of procedure might be resorted to which might best appear to conform to the spirit of the law, and second, the court went on to say this: ''Manifestly, however, the right to recover damages must be claimed and proof submitted in support thereof before the conclusion of the hearing; otherwise the court, after final judgment entered, is without jurisdiction to make award thereof.'' What the court there said to the world and to the lawyers of the State of Montana was not that the claim must be made before the oral hearing is completed but that if you wish to secure damages by way of attorney's fees for your client in a mandamus proceeding you must make suitable claim some time during the proceedings for those damages, but no specific method need be followed so long as the claim is made and proof submitted prior to the time judgment is entered. Further than that the court pointed out that the reason the claim had to be made and proof submitted before judgment was entered, was because otherwise the district court would be without jurisdiction to consider them. Relator's counsel here had a right to rely on what was said in this prior decision of our court, which has stood for twenty years.

This court suggested in that case that it might be well for the legislature to pass an Act specifically covering the manner of making claim for this type of damages in a mandamus proceeding. This the legislature has not seen fit to do. If the procedure sanctioned in this prior decision in 75 Mont. 122, 242 Pac. 421, is bad, it might be well for this court to point it out in its decision in this case, and thus indicate to the members of the bar

that in the future this court would look with disfavor on the method followed in that case and in this for claiming these attorney's fees as damages. But it seems to me unjustifiable to cause this great financial loss to relator and most probably to his counsel where reliance has been had on the settled law of this state. If lawyers in preparing their pleadings in matters like this cannot rely on the decisions of this court in the past, how are they going to avoid pitfalls such as this? A case indirectly covering this same proposition is *State ex rel. Snidow* v. *State Board of Equalization*, 93 Mont. 19, 17 Pac. (2d) 68. There an original application for mandate was filed in this court. No evidence was submitted to this court on this matter of damages by way of attorney's fees and expenses and yet this court held unanimously on this point with Mr. Chief Justice Callaway writing the opinion that it could fix the value of those attorney's fees without any evidence, based entirely upon the memorandum of costs and disbursements filed with the court after the hearing. More recently in the case of *State ex rel. Lynch* v. *Batani,* 103 Mont. 353, 62 Pac. (2d) 565, 569, where no proof was adduced before this court, we unanimously held that we had ''the power to fix and allow a reasonable attorney fee without the reception of evidence with respect to the same. * * * Here counsel signed the petition and appeared on behalf of the relator throughout the entire course of this proceeding; he performed much of his labor in the presence of this court; the pleadings also evidence it. For us to hold, before we could find that some service has been performed, that relator should have proved all the service rendered by his counsel, would be to insist on an idle act not required by law. (Sec. 8761, Rev. Codes) ''.

I think this is a much stronger case than either of the latter two cited for the allowance of these attorney's fees. Respondents knew that under the statute relator was entitled to attorney's fees as damages, if he prevailed on the principal question. Evidence was introduced in the proceedings before the trial court during the course of the hearing covering these services and respondents had an opportunity to controvert this evidence. A

bill of particulars was filed prior to judgment and while the court had jurisdiction. No one was taken by surprise. No one suggested that the amount of damages by way of attorney's fees allowed was excessive. All of the counsel representing relator were capable, experienced practitioners. They could have moved to amend their bill at any time in the district court. They could have sought additional time in which to file a bill of particulars prior to the close of the hearing. But, as experienced counsel they thought they could rely on the decision of this court, *State ex rel. Golden Valley County* v. *District Court*, supra, and this they did. And I dissent most vigorously from that portion of the majority opinion which denies to relator the damages provided by the statute.

I question also the propriety of the ruling of this court to the effect that costs be divided on this appeal. In the first place, under section 9858, costs automatically go to the applicant for a writ of mandamus if judgment be given for him, and as I read the Act, the court is without discretion in the matter, at least in the district court. Here this relator has been engaged for years in pursuing his remedy. The writ was issued in the lower court and his principal contention is sustained in the majority opinion. I can see no justice or equity in dividing the costs upon the modifications made here in the judgment of the district court.

Rehearing denied September 5, 1944.