FRANCES BROWN, Plaintiff and Respondent, *v.* STATE BOARD OF EDUCATION, a body politic, H. L. STEELE, L. J. AIKEN and LYLE COOPER, Defendants and Appellants.

No. 10616
Submitted September 11, 1963. Decided October 9, 1963.
385 P.2d 643

548

Forrest H. Anderson, Atty. Gen., Donald A. Douglas, Asst. Atty. Gen. (argued), Helena, for appellants.

Kurth, Conner, Jones & Ryan, Robert P. Ryan (argued), Billings, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by the State Board of Education from a judgment in the sum of $1,300 in favor of plaintiff, after findings by the District Court that a contract of employment existed between plaintiff and the State of Montana.

The State Board of Education will hereafter be referred to as the Board. The plaintiff, Frances Brown, will be referred to as plaintiff.

Plaintiff was, from September 1, 1961, a speech instructor at Eastern Montana College of Education at Billings. Plaintiff had been employed for a period from September 1, 1961, to June 30, 1962. She had a formal written contract of employment showing this period of employment, but dated October 6, 1961. The contract of employment was signed by plaintiff as employee, Herbert L. Steele as President and certified by Russell Barthell, Secretary, State Board of Education—Ex-officio Regents of the University of Montana. The period from September 1, 1961, to June 30, 1962 is not in controversy.

Plaintiff brought suit against the Board by a complaint filed June 6, 1962, in which she alleged that the Board, acting by and through its authorized agents and employees employed her to teach under contract the summer session, July and August of 1962. The complaint went on to allege that plaintiff had not been removed as regulations required; and, further that the Board would refuse to pay her salary of $1,300 for the two-month period. The prayer was for declaratory judgment as to plaintiff's rights and for the salary and costs.

The Board answered, admitting that plaintiff was a speech instructor and that no proceedings for her removal had been

had as well as other matters. The Board denied that a contract existed.

Trial was had. Plaintiff testified concerning her original hiring for the academic year September 1, 1961, to June 30, 1962. Exhibit A, her written contract for that period, was admitted into evidence. Exhibit A was for a ten-month term and signed as previously stated. On the reverse side of Exhibit A, which is Form 1 of the Board, appears "Regulations in Regard to Tenure of Office Instructional and Scientific Staffs". It is these regulations that plaintiff alleged in her complaint as ruling concerning lack of removal proceedings. More concerning these regulations will be alluded to later.

In the pleadings and testimony, H. L. Steele, L. J. Aiken and Lyle Cooper appear respectively as President, Vice-President, and chairman of the Division of Language and Literature of the college. Also appearing as a participant was one Marler who acted as Acting Chairman of the Speech Department in which plaintiff taught.

Plaintiff testified that she had discussions with Marler and Cooper regarding employment during the summer session of 1962. These discussions, according to plaintiff, began in October 1961, apparently after she received the signed contract, Exhibit A. One discussion was had with Marler, one with Cooper. Plaintiff then testified concerning Exhibit B. Exhibit B is a duplicated memorandum addressed to "All Language and Literature Faculty from E. Lyle Cooper." It was what might be called a resume of the knowledge of Cooper regarding a ten-month contract and contained his, Cooper's, assurance as follows:

"8. Each faculty member in this Division who wishes to convert from a 12-month to a 10-month contract before February 1, 1961, will receive this written commitment from me as chairman of the division:

" 'The Division of Language and Literature offers this written assurance: that if you so desire, you will be employed

to teach during the summer session of each (even-numbered, odd-numbered) year for as long as you continue in your present position. Your willingness to teach when a summer position is offered to you must be indicated in writing, however, not later than December 1 of the year preceding the summer involved.' "

Just how plaintiff might be affected, if at all, by Exhibit B was not explained by her, except that she testified that she never entered into a contract for 1962-1963. At any rate she then testified that Mr. Marler asked her to teach the summer session of 1962, and she agreed. Apparently this was at the same conversation with Marler held in October 1961.

Plaintiff then testified as to Exhibit D. Exhibit D is another memorandum from Cooper to Dr. Earl K. Warne, Director of Summer Session. It reads:

"Miss Frances Brown [plaintiff], Dr. C. F. Gruenert, and Mr. John P. Herrmann have expressed a desire to accept a ten-month contract for the 1962-1963 college term. Since this individual has already been assigned teaching duties for the 1962 Summer Session, it will be necessary, as I understand the matter, to provide them with separate contracts for the summer." Exhibit D was dated January 26, 1962.

Exhibit C is another memorandum from Cooper. This one is dated November 14, 1961, and addressed to plaintiff. It concerns summer session of 1962 and states: "Your *tentative* schedule for the Summer Session of 1962 is as follows: * * *"

Exhibit G is a printed yellow document that was called the 1962 brochure for Eastern Montana College. Plaintiff's name, Brown, appeared as Instructor.

Exhibit F is a memorandum from Aikens to plaintiff, dated March 27, 1962, which informs plaintiff that she is not being offered a contract for either the summer session of 1962 or the 1962-63 school term. It also includes a reference to a resignation by plaintiff.

In addition to testimony concerning the foregoing Exhibits,

plaintiff testified that on her original hiring she had dealt with Steele, Aikens, and a Mr. Stump. (Stump was testified to as then holding Cooper's position as Chairman of the Division of Language and Literature).

Dr. Steele was called as a witness by plaintiff. He testified that he was authorized by the Board to seek out and get instructional staff. He also said that he delegates the interviewing of applicants to heads of departments and that he, in turn, recommends to the Board the hiring. He testified flatly that the Board does the hiring. He admitted that he never specifically told heads of departments that they did not have authority to hire; but also, that he had not considered it necessary.

Cooper was then called by plaintiff. He testified as to Exhibits B, C, and D. He denied specifically ever representing to plaintiff that he had authority to hire her.

The Board did not present any evidence, other than as brought out by plaintiff's case and on cross-examination of plaintiff's witnesses. The Board moved for dismissal for failure of proof of a prima facie case and failure of proof of the essential elements to constitute a contract between plaintiff and the Board. This motion was denied.

The trial court made findings. It specifically found that the Board, acting by its duly authorized agents and employees, employed plaintiff to teach the summer session of 1962 until August 31, 1962. The trial court made conclusions of law to the effect that plaintiff had a contract of employment between July 1, 1962, and August 31, 1962, and was entitled to salary of $1,300 for the two-month period. Exceptions were denied.

The specifications of error go to the question of whether a contract for July and August 1962 was proven. As put by the plaintiff respondent, did the College officials have authority to enter into a contract with plaintiff?

We refer back to the regulations appearing on Exhibit A.

The plaintiff relies on these regulations. Paragraph 10 provides:

"Nothing herein contained shall be deemed or held to constitute a surrender or abdication of any of the powers, duties, or functions imposed upon the State Board of Education by the constitution and laws of the State of Montana." The regulations have to do with classification, titles, tenure, removal, etc. Paragraph 5 states:

"5. At the expiration of the term of appointment of a professor or an associate professor, if appointed for a limited term, or of an assistant professor, lecturer, instructor, or assistant, there is no obligation whatever to renew the appointment, and without renewal the appointment thereupon lapses and becomes void. In every case of such non-renewal of appointment, official notice thereof shall be given by the chief executive of the institution, not later than April 15th; provided, that a notice given ninety days prior to the expiration of the contract shall be sufficient in case of the non-renewal of the appointment of any member of the Agricultural Extension Staff."

Plaintiff received her notice as recited previously on March 27, 1962. Thus we are not dealing with tenure or failure to give notice or such contractual or statutory matters but rather with the problem posed by plaintiff as, Did the College officials have authority to enter into a contract with plaintiff? According to plaintiff, the specific College officials must have been Cooper and Marler since plaintiff states they were the only ones she discussed employment with.

No proof of any action by the Board was offered. Neither was any proof of any delegation by the Board, of power to choose and appoint faculty, offered. So that, the District Court must have based its findings on an implied delegation of power; since it made a direct finding that the Board, acting by its duly authorized agents and employees employed plaintiff for the disputed summer session.

The plaintiff respondent, in her brief, asserts that an express statute authorized the Board to delegate to the President and faculty the selection of teachers and other employees. R.C.M.1947, section 75-107, provides in part:

"Powers and duties, The state board of education shall have power and it shall be its duty: * * *

"12. To choose and appoint a president and faculty for each of the various state institutions named herein, and to fix their compensation. * * *

"14. To confer upon the executive board of each of said institutions such authority relative to the immediate control and management, other than financial, and the selection of the faculty, teachers, and employees, as may be deemed expedient, *and may confer upon the president and faculty such authority relative to the immediate control, and management, other than financial, and the selection of teachers and employees, as may by said board be deemed for the best interest of such institutions.*" (Emphasis supplied.)

The italicized portion of section 75-107 is what plaintiff asserts is a legislative grant of power to delegate the selection of teachers to the president and faculty.

On the other hand the appellant Board asserts the meaning to be one of limitation; that is, that the Board may *not* confer on the president and faculty the authority to select teachers.

R.C.M.1947, section 75-403, provides:

"The control and supervision of the university of Montana, as hereinbefore constituted, are vested in the state board of education, which must appoint a president and faculty for each of the various state institutions constituting the university of Montana, and such other officers, agents, and employees for said university of Montana and for its component state institutions as the state board may deem necessary. The board shall also prescribe the powers and duties of the president, faculty, officers, agents and employees of said institutions

composing said university of Montana, and shall also establish for the government of the university of Montana and for its component institutions, and for the instruction given therein, such rules and regulations, not inconsistent with the laws of the state, as may be necessary for the proper government and control of the university of Montana and its said component institutions."

Our Constitution in Article XI, Section 11, provides:

"The general control and supervision of the state university and the various other state educational institutions shall be vested in a state board of education, whose powers and duties shall be prescribed and regulated by law. The said board shall consist of eleven members, the governor, state superintendent of public instruction, and attorney general, being members ex-officio; the other eight members thereof shall be appointed by the governor; subject to the confirmation of the senate, under the regulations and restrictions to be provided by law."

In State ex rel. Phillips v. Ford, 116 Mont. 190, 151 P.2d 171, this court discussed the provisions of rules and regulations of the State Board of Education which provided that the president of a University unit should "make nominations and reports of appointments, promotions, salaries, transfers, suspensions, dismissals and resignations of administrative officers, members of the instructional and scientific staffs and other employees of * * * the university." The court said of this provision:

"* * * Counsel for defendants have argued that because of this provision President Simmons was vested with authority to accept the resignation of Phillips, an authority which he claims he exercised on the 2d day of October, 1937. So far as resignations are concerned the provision merely means that the president must report the same to the board, not that he may accept them. Indeed, it is alleged in the amended petition that on the 13th day of December, 1937, the board pur-

ported to accept the resignation and in the amended answer thereto it is admitted that on the 13th day of December, 1937, the board did accept the resignation. The record discloses, too, that at a meeting of the board held on the 11th day of July, 1938, it refused to accept without investigation the resignation of the head teacher at the school for the deaf and blind and again that at a meeting held on the 11th day of December, 1939, it refused to accept the resignations of two professors from the faculty of the university but decided to consider them at some future time. In acting thus it gave a practical and correct demonstration of its powers and responsibilities under the law and showed a proper appreciation of its rights and obligations under the contracts it had with these men. *If the provision in question conferred on the president the power to make appointments* of administrative officers, members of the instructional and scientific staffs and other employees of the university *it conflicted* partly with section 836 [now R.C.M. 1947, section 75-107] and wholly with section 853 [now R.C.M. 1947, section 75-403], Revised Codes of Montana 1935." (Emphasis supplied.)

It is clear from the foregoing that this court in the Phillips case concluded that sections 75-403 and 75-107 restricted the Board from delegating its powers in this field (and see State ex rel. Keeney v. Ayers, 108 Mont. 547, 92 P.2d 306).

Now, then, we refer back to the only proof offered, the regulations appearing on the reverse side of Exhibit A. Paragraph 10 states:

"Nothing herein contained shall be deemed or held to constitute a surrender or abdication of any of the powers, duties, or functions imposed upon the State Board of Education by the constitution and laws of the State of Montana."

This makes it clear that no delegation of power by the Board was attempted. We think equally clear that no implied power to contract was shown; and by our discussion

of the Constitution, statutes, and this court's decision in the Phillips case could any implied power have been delegated to create a contract such as asserted here. Thus, we hold that the district court was in error in finding that the Board, acting by its duly authorized agents and employees, employed plaintiff for the summer session.

The plaintiff, respondent here, suggests in her brief and on oral argument that "apparent authority" is all that is needed to establish a binding contract. To reach this argument, plaintiff asserts that since plaintiff was already a teacher at Eastern, and that her employment was entered into in the same manner both times and that the employment of other teachers who did teach was done in the same way and that these administrative matters were handled exactly as they must be from a practical standpoint, then the trial court was justified in finding a binding obligation.

However, our reading of the record reveals the fallacy of the asserted facts. Plaintiff's employment was not entered into in the same manner both times. The record is silent as to employment of other teachers, and there is no showing that the administrative matters were handled the same way. These differences are apparent. Perhaps it is that plaintiff relies on estoppel in that the course of conduct on the part of Cooper and Marler somehow estopped the Board from denying the existence of a contract. This fails too, because as shown before, the Board has done nothing upon which an estoppel could arise.

For the foregoing reasons, the judgment is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON and DOYLE concur.

MR. JUSTICE ADAIR dissenting.

I am unable to agree with the foregoing opinion.

By an *oral* agreement Frances Brown was employed as a speech instructor at Eastern Montana College of Education

at Billings, Montana, for the ten-month academic year, commencing on September 1, 1961 and ending on June 30, 1962, and she taught under such *verbal* agreement from September 1, 1961, to October 6, 1961, when, for the first time, she was given a formal *written* contract of employment bearing date of October 6, 1961, which assumed to cover her employment for the entire period from September 1, 1961, to June 30, 1962. This contract, both the oral part and the written part, Frances Brown fully performed.

The *written* contract of employment dated October 6, 1961, was signed by Frances Brown, as the employee, and it was also signed by Herbert L. Steele as President of Eastern Montana College of Education, and such *written* contract was certified by Russell Barthell, Secretary, State Board of Education—Ex-officio Regents of the University of Montana.

In October 1961, Frances Brown had discussions with one Marler who then was the Acting Chairman of the Speech Department in which Frances Brown taught and who asked Frances Brown to teach during the summer session of 1962, to which offer she agreed and accepted.

Frances Brown also had discussions with Lyle Cooper then the Chairman of the Division of Language and Literature regarding her employment during the coming summer session of 1962.

In a memorandum dated November 14, 1961, being Exhibit C, addressed to Frances Brown, Lyle Cooper wrote: "Your tentative schedule for the Summer Session of 1962 is as follows * * *."

In Exhibit G, being the 1962 brochure for Eastern Montana College of Education, Frances Brown's name appeared as an instructor at such institution.

All that Frances Brown had on September 1, 1961, when she entered the employ of Eastern Montana College of Education, as a speech instructor, was an *oral* "gentleman's agreement" under which she worked and taught, without so much as

the scratch of a pen to evidence her agreement until on or subsequent to October 6, 1961, when she was given a formal written contract. Since an oral contract was sufficient to cover Frances Brown's ten months academic year, running from September 1, 1961, to June 30, 1962, a similar *oral* contract should have been sufficient to carry her through the following two months of the summer session running from July 1, 1962, to August 31, 1962.

I am of the opinion that the officials of Eastern Montana College of Education at Billings did have the authority to enter into a valid contract with Frances Brown.

I am further of the opinion that the trial court correctly found that the State Board of Education, acting by its duly authorized agents and employees, hired Frances Brown to teach during the summer session of 1962, and that the trial court properly concluded that Frances Brown had a binding contract of employment for the period from beginning on July 1, 1962, and ending on August 31, 1962, and that she was and is entitled to her salary of $1,300 for such two-month period for "the labourer is worthy of his hire."